BANK OF INDIANOLA, A CORPORATION, APPELLEE, V. BEULAH HERRON, APPELLANT, AND CAROL FLETCHER, PERSONAL REPRESENTATIVE OF THE ESTATE OF JACK D. FLETCHER, DECEASED, APPELLEE.

488 N.W.2d 856

Filed April 14, 1992.    No. A-89-1485.

Stanley C. Goodwin, of Colfer, Lyons, Wood, Malcom & Goodwin, for appellant.

Maurice A. Green, of Burger, Bennett & Green, P.C., for appellee Fletcher.

SIEVERS, Chief Judge, and MILLER-LERMAN and WRIGHT, Judges.

MILLER-LERMAN, Judge.

Bank of Indianola filed an interpleader action to resolve conflicting claims to the proceeds of checking account No. 153502. The parties competing for the proceeds of the account are Beulah Herron, an adult friend of the deceased, Jack D. Fletcher, and Carol Fletcher, the decedent's daughter. The district court found that although Herron proved the account was a joint account, Carol Fletcher had proved that it was not the decedent's intent that the proceeds of the account pass to Herron through a right of survivorship. Herron appeals the order of the district court overruling her motion for a new trial. For the reasons recited below, we reverse the decision of the district court and remand the cause for an order directing that Herron receive the proceeds of the Indianola joint checking account No. 153502.

An interpleader suit is an action in equity. *Citizens Nat. Bank of Wisner v. McNamara*, 120 Neb. 252, 231 N.W. 781 (1930). In equitable actions the reviewing court reviews the factual questions de novo on the record and will reach its own conclusions independent of the trial court's findings. However, if " 'credible evidence is in conflict on a material issue of fact,' " the reviewing court will " 'consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.' " *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 657, 477 N.W.2d 577, 581 (1991).

Jack Fletcher opened checking account No. 153502 with the Bank of Indianola on May 12, 1972. Sometime after that date, Herron was brought to the bank by Jack Fletcher, and her signature was added to the signature card. The back of the signature card provided space to authorize joint account

survivorship rights. The back of the 1972 signature card was blank.

In January 1981, Jack Fletcher again took Herron to the Indianola bank, and they both signed a second signature card, which converted the checking account into an interest-bearing (NOW) account. Herron's signature was also authorized on a safe deposit box contract.

Herron had known Jack Fletcher since they were teenagers, and after her husband's death in March 1972, they had seen each other on a regular basis until Jack Fletcher's death in 1987. Jack Fletcher spent the last few weeks of his life being cared for and residing in Herron's home. Herron wrote and signed checks on account No. 153502, including the check for Jack Fletcher's funeral expenses. The checks were honored.

The trial court found in favor of Carol Fletcher. Herron's motion for a new trial was overruled, and she has now appealed to this court.

## DETERMINATION OF JOINT ACCOUNT

Under Nebraska law, a "[j]oint account means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship." Neb. Rev. Stat. § 30-2701(4) (Reissue 1989). A "party" means a person who has a "present right, subject to request, to payment from a multiple-party account." § 30-2701(7). "Request means a proper request for withdrawal, or a check or order for payment, which complies with all conditions of the account . . . ." § 30-2701(12).

Herron was a signatory on account No. 153502. She wrote and signed checks on the account, including the check for Jack Fletcher's funeral expenses. There were no restrictions placed on Herron's ability to sign checks. The checks signed by Herron were honored by the bank. The trial court found that account No. 153502 was a joint account as defined under the statute. We agree.

## RIGHTS OF SURVIVORSHIP

Pursuant to the Nebraska Probate Code there is a statutory presumption that a joint bank account belongs to the surviving party. Neb. Rev. Stat. § 30-2704 (Reissue 1989). In view of the

statutory presumption of survivorship, the trial court held that appellee Carol Fletcher had the burden to prove by "clear and convincing evidence" that Jack Fletcher did not intend Herron to have survivorship rights in the account. See § 30-2704. "Clear and convincing evidence" has been defined as " 'that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.' " *In re Estate of Lienemann*, 222 Neb. 169, 175, 382 N.W.2d 595, 600 (1986) (quoting *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984)). The trial court's definition is correct, but we disagree with its application in this case.

The trial court specifically found that

> the failure to sign the joint tenancy provisions on the signature card, probably before the passage of the 1974 act, does show intent. The defendant Herron's impression that her being on the account was for the purpose of her signing checks does not directly show the intent of Jack Fletcher, but it certainly shows that no other intent was conveyed to her by Jack Fletcher. The "NOW" account has not been overlooked, but its provisions state that it does not change the nature of the account. The relationship between Jack Fletcher and the contestants has also not been overlooked, but in its entirety does not rebut the intent shown by the card and the circumstances.

The trial court should not have considered Herron's impressions in determining Jack Fletcher's intent. Under the cases, Herron's impressions concerning her role in the account are irrelevant. The Nebraska Supreme Court has held that "[e]ven where a surviving party has not known that another has created a joint account involving the survivor, nevertheless the survivor acquires ownership of the funds in the bank account under normal survivorship principles of joint tenancy." *Lienemann*, 222 Neb. at 176, 382 N.W.2d at 601. "[O]nly the intent of the individual creating and funding the account is relevant under § 30-2704 in determining the nature of the account, that is, whether there is right of survivorship pertaining to an account." *Id*.

The Nebraska Probate Code and its comments suggest that the fear of turning nonsurvivorship accounts into unwanted

survivorship accounts was "meliorated by various considerations," including the "doubt that many persons using any form of multiple name account would not want survivorship rights to attach" and a delay in the effective date of the statute so that banks could send notice to customers warning them to review their accounts. § 30-2704, comment.

In assessing the weight of the evidence, we believe Jack Fletcher's failure to sign the *back* of the signature card authorizing survivorship rights should be balanced against Fletcher's deliberate and unequivocal acts of personally bringing Herron to the bank to add her name to the account at least twice. In addition to including Herron on the account in 1972, Jack Fletcher's intent to have Herron as a party to the account was reiterated in 1981 when he brought Herron to the bank a second time to place her signature on the NOW account signature card. "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party . . . as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." § 30-2704(a). The Nebraska Supreme Court has applied the "clear and convincing" standard of § 30-2704 and held that "at the death of a party to a joint account, funds in such account belong to the surviving party . . . ." *In re Estate of Lienemann*, 222 Neb. 169, 175, 382 N.W.2d 595, 600 (1986).

The facts in *Lienemann* are critical in applying the "clear and convincing" standard to the evidence. In *Lienemann*, the decedent had opened two individual savings accounts in 1970 and 1974 and acquired a certificate of deposit (CD) in 1971. These accounts were funded entirely by the decedent. In January 1979, the decedent took his son Donald to The Packers National Bank (PNB), where he instructed a bank employee to put the balance of his 1970 savings account into a CD " 'in my name and in Don's.' " *Id*. at 171, 382 N.W.2d at 598. The agreement accompanying the CD was signed *only* by Donald. The agreement provided that the CD "belonged to the depositors 'as joint tenants with right of survivorship.' " *Id*.

In May 1979, the decedent again contacted PNB and instructed them to transfer the funds from his 1971 CD into a

new CD payable to either the decedent or his son Donald. Donald was again the only signatory of the CD agreement. In March 1980, "Donald, at [the decedent's] request," appeared at Commercial Federal Savings and Loan Association (CFSL) and, under his power of attorney, withdrew the decedent's 1974 savings account and purchased a money market certificate in the names of the decedent and Donald, "[a]s [j]oint [t]enants WROS." *Id.* at 172, 382 N.W.2d at 598. The decedent's estate challenged the survivorship rights of Donald on all the joint CD's.

The Nebraska Supreme Court held that even though a PNB employee had difficulty remembering whether the decedent requested the joint names as payees in person or on the phone, this did not "negative the statutory consequence of a *presumption that a joint bank account belongs to the surviving party* pursuant to § 30-2704." (Emphasis supplied.) *Id.* at 175, 382 N.W.2d at 600.

No other evidence was found to negate that statutory presumption. Donald's signature on all the documents under his power of attorney did not evidence an "intent counteracting the statutory presumption and disposition of a joint bank account." *Id.* Donald's ignorance concerning the survivorship rights of a joint tenant was irrelevant, since it is only the intent of the decedent depositor which is examined.

The Nebraska Supreme Court reviewed the comment to § 30-2704, stating that the "underlying assumption is that most persons using joint accounts want the survivor or survivors to have the balances remaining at death" and the comment to § 30-2703, stating that the "theory of these sections is that 'the account operates as a valid disposition at death rather than a present joint tenancy.' " *Lienemann*, 222 Neb. at 176, 382 N.W.2d at 601. See, also, *Peterson v. Peterson*, 230 Neb. 479, 488, 432 N.W.2d 231, 237 (1988) (holding that "[o]ne who knowledgeably creates a joint account with another arguably does so with the present intent to employ the account's survivorship characteristic in substitution for a testamentary device"); *Rorabaugh v. Garvis*, 198 Neb. 223, 252 N.W.2d 161 (1977) (holding that a mother's bringing her daughter into the bank to have her sign the signature card on the account

demonstrated enough donative intent to find the completion of a gift of the account).

In *Lienemann*, the court further determined that the CFSL money market certificate proceeds should not pass to Donald. The CFSL account, "[i]n contrast with the PNB accounts . . . was established *without any instruction or direction* from [the decedent]." (Emphasis supplied.) 222 Neb. at 179, 382 N.W.2d at 603. Because no instruction was personally given by the decedent to the bank, the court had to look back to the last indication of the decedent's intent. That indication was the decedent's creation of an individual savings account in 1974. The transformation of the original account into a joint account was "unilaterally erroneous . . . and done without reference to any intent on the part of the depositor." *Id*. at 180, 382 N.W.2d at 603.

In the case at bar, Jack Fletcher personally took Herron to the bank sometime in 1972 and participated in having Herron added to the signature card. Although Jack Fletcher did not sign the back of the card authorizing survivorship rights, this is not fatal to Herron's claim. In 1981, Jack Fletcher again personally brought Herron to the bank, where they both signed the new NOW account signature card.

The intent of Jack Fletcher evidenced by his second trip to the bank with Herron in 1981 is as clear as the decedent's intent in *Lienemann*. In *Lienemann*, the court held that the PNB 1971 individual CD account was transformed into a joint CD account, with its accompanying right of survivorship. The only evidence of the decedent's intent was the decedent's instruction to have two names placed on the CD. The existence of a prior individual CD account was not sufficient to negate that intent. In the case at bar, Jack Fletcher's donative intent was evidenced by his action in bringing Herron to the bank and having her sign the NOW signature card.

In reviewing factual questions de novo on the record, this court may reach its own conclusions. *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). Considering the entire circumstances, we find that the intent of Jack Fletcher to have a joint account, as defined under § 30-2701, with its presumption of a right of survivorship in

Herron, has not been negated by "clear and convincing evidence." The cause is remanded with directions to the trial court to enter an order directing that Herron receive the proceeds of Bank of Indianola account No. 153502.

REVERSED AND REMANDED WITH DIRECTIONS.