NEIL LINEHAN, APPELLEE, V. FIRST NATIONAL BANK OF GORDON,
NEBRASKA, APPELLEE, AND MONA L. HAGEN, APPELLANT.
579 N.W. 2d 157

Filed May 19, 1998.   No. A-97-292.

A. James Moravek, of Curtiss, Moravek, Curtiss &
Margheim, for appellant.

Michael T. Varn for appellee Linehan.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

In this case, we are asked to determine whether an oral mod-
ification of a preexisting joint bank account with rights of sur-
vivorship was valid.

## BACKGROUND

On January 18, 1984, Neil and Winona Linehan, husband and
wife, opened a bank account with the First National Bank of
Gordon, Nebraska. The account signature card, signed by Neil
and Winona when they opened the account, indicates that this
was a joint account with rights of survivorship. At some point
after this, a date not in our record, Winona took her daughter,
Mona L. Hagen, into the bank and informed the bank that she
wanted Mona to sign the signature card because she wanted
Mona to be on the account "[i]n case something would happen
to her." Pursuant to Winona's oral request, Mona was permitted
to sign the original signature card. There is no evidence that
Neil approved of this change orally or in writing, or that he was
even aware it had taken place.

Winona died December 23, 1991. After Winona's death, a
new signature card was typed for this account. A box on the

preprinted card was marked indicating that this was an "individual account," and Neil's name and address were typed on the front of the card. Both Neil and Mona signed on the "authorized customer signature" lines. According to Mona, the new card was drawn up because after Winona's death, the bank requested that she and Neil re-sign all the papers.

Several years later, yet another signature card was prepared for this account at Neil's request. This card indicated that the account was a "single-party" account, and Neil was listed as the sole owner of the account. Neil and his brother both signed the signature card. A paragraph under the signatures permitted the owner to add an agency (power of attorney) designation to the account. Neil's brother's name was typed on the line designating an agent. Mona's name was not on the card, she did not sign the card, and she had no knowledge of the transaction.

On June 26, 1996, Neil attempted to withdraw the entire proceeds in the account, but the bank refused to cash the check. Later that same day, Neil filed a lawsuit against First National Bank to obtain the funds in the account. Pursuant to Neb. Rev. Stat. § 25-325 (Reissue 1995), the bank filed an interpleader affidavit. In its affidavit, the bank acknowledged that it had refused to honor Neil's demand for payment and averred that Mona had also demanded payment of the balance of the account. The bank offered to continue to hold the money, deposit the money with the court, or deliver the money as instructed by the court.

On July 23, 1996, pursuant to § 25-325, Mona claimed to be an interested party and was allowed to make herself a defendant to the action. On December 2, trial was held on the bank's interpleader. The trial court determined that the bank was discharged from liability conditioned upon the bank's holding the funds until further order of the court.

Neil filed a motion for summary judgment on January 24, 1997. After a hearing held February 4, 1997, the trial court found that the entire fund belonged to Neil. The court concluded that Winona had not taken the necessary steps to grant Mona any interest in the account upon Winona's death and thereby to divest Neil of his contractual rights to the entire survivorship interest. Mona timely appeals that judgment.

## ASSIGNMENT OF ERROR

Mona's sole assignment of error is that the trial court erred in granting Neil's motion for summary judgment.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Syracuse Rur. Fire Dist. v. Pletan*, 254 Neb. 393, 577 N.W.2d 527 (1998).

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Robertson v. School Dist. No. 17*, 252 Neb. 103, 560 N.W.2d 469 (1997).

## DISCUSSION

When Neil and Winona opened the bank account in 1984, the signature card provided, inter alia:

> JOINT ACCOUNT as defined in and governed by the Nebraska Probate Code. It is payable on request to any depositor during lifetime and upon the death of any depositor to any survivor(s) with survivorship rights continuing if there are more than one survivor. Any party may change the form of this account *by signed written order* to the Bank.

(Emphasis supplied.)

The applicable Nebraska Probate Code sections in effect at the time Neil and Winona opened the account and when Mona signed the signature card were Neb. Rev. Stat. §§ 30-2701 through 30-2713 (Reissue 1979), which address multiple-party accounts. We note that these sections have since been repealed and replaced by Neb. Rev. Stat. §§ 30-2715 through 30-2746

(Reissue 1995). There were several significant changes made by these new sections affecting multiple-party accounts to which spouses are parties. In particular, see §§ 30-2722 to 30-2726.

Joint account is defined as an "account payable on request to one or more of two or more parties whether or not any mention is made of any right of survivorship." § 30-2701(4).

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interests under section 30-2703 augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

§ 30-2704(a).

> The provisions of section 30-2704 as to rights of survivorship are determined by the form of the account at the death of a party. This form may be altered *by written order* given by a party to the financial institution to change the form of the account or to stop or vary payment under the terms of the account. The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

(Emphasis supplied.) § 30-2705.

Party is defined as "a person who, by the terms of the account, has a present right, subject to request, to payment from a multiple-party account." § 30-2701(7).

Nebraska courts have never before considered the effect of an attempted oral modification of the form of an *existing* joint bank account under these statutory provisions. However, a number of other jurisdictions with similar probate code provisions have considered the issue and concluded that once a joint account has been established, the exclusive method for altering or modifying the form of the account is by a signed written order or direction to the bank. See, *Haas v. Voigt*, 940 S.W.2d

198 (Tex. App. 1996); *Stevens v. Billings*, 319 Ark. 265, 890 S.W.2d 609 (1995); *Conservatorship of Milbrath*, 508 N.W.2d 360 (N.D. 1993); *Graves v. Kelley*, 625 N.E.2d 493 (Ind. App. 1 Dist. 1993); *Rogers v. Shelton*, 832 S.W.2d 709 (Tex. App. 1992); *Estate of Wolfinger v. Wolfinger*, 793 P.2d 393 (Utah App. 1990).

In *Rogers v. Shelton, supra*, Coy Rogers and his wife, Laura Rogers, signed an account agreement establishing a joint account with right of survivorship. Raymond Rogers' name was subsequently typed on the card, and he also signed the card. Laura died the month after Raymond signed the card, and Coy died several years later. The executors of Coy's estate sued Raymond, seeking a declaratory judgment that the addition of Raymond's name and signature to the preexisting account of Coy and Laura's did not create a right of survivorship in Raymond. The Texas Court of Appeals agreed. Citing Tex. Prob. Code Ann. § 440 (Vernon 1980), which is nearly identical to § 30-2705 as it existed when Neil and Winona set up this account, the Texas court concluded that a new contract was not established when Raymond's name was added to the card because no " 'written order' " was given to the bank. *Rogers v. Shelton*, 832 S.W.2d at 711.

A similar result was reached in *Estate of Wolfinger v. Wolfinger, supra*. There, Walter Wolfinger had an individual bank account. Upon Walter's oral instructions, his daughter's name was subsequently added to his account. After an argument with his daughter, Walter orally instructed the bank to remove his daughter's name from his account. When Walter died, his daughter sued his estate, claiming, inter alia, that she was entitled to the entire proceeds in the bank account. The trial court concluded that a joint account had not been established and accordingly found in favor of the estate. The daughter appealed.

On appeal, the Utah Court of Appeals initially addressed the issue of whether the trial court erred in concluding that Walter had never established a joint account with his daughter. The court, recognizing that " '[p]arties to a contract may, by mutual consent, modify any or all of a contract,' " concluded that Walter's oral instructions to the bank to add his daughter to the account were sufficient to create a joint account. *Id.* at 396.

The court next addressed whether Walter had successfully modified the joint account when he orally instructed the bank to remove his daughter's name. Citing Utah Code Ann. § 75-6-105 (1978), which is nearly identical to § 30-2705, the court concluded that a joint account could be modified only by a written request. Because there was no evidence that Walter had ever submitted a written request to the bank, the court found in favor of the daughter.

In the present case, it is undisputed that the only order the bank ever received to add Mona to the account was Winona's oral instruction that "[i]n case something would happen to her," she wanted Mona "to be on the account." The signature card signed by Neil and Winona when they created this account in 1984 and § 30-2705 specifically require any change in the form of the joint account be by signed written order. According to Mona's theory, adding her name to the signature card made her "a party" and changed the form of the account from a two-person to a three-person joint account. Because no written order was ever given to the bank, under both the terms of the agreement and § 30-2705, we conclude that the addition of Mona's name to the signature card did not divest Neil of his sole survivorship interest.

Citing *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986); *Rorabaugh v. Garvis*, 198 Neb. 223, 252 N.W.2d 161 (1977); and *Bank of Indianola v. Herron*, 1 Neb. App. 77, 488 N.W.2d 856 (1992), Mona argues that summary judgment was improper because "Neil failed to prove by clear and convincing evidence that Winona did not intend Mona to have survivorship rights in the account." Brief for appellant at 13-14.

A detailed analysis of the cited cases would serve no useful purpose. Briefly, in each of the cases cited, a second name was added to an individual account and the issue presented was whether a joint account with right of survivorship had been established. There is no statutory restriction in the Nebraska Probate Code which prohibits a party from orally instructing his or her bank to change the party's *individual* account into a joint account. It is only after a joint account has already been created that a signed written order is necessary to modify the terms of the account. See §§ 30-2704 and 30-2705.

## CONCLUSION

In order to make a prima facie showing that she was entitled to any of the funds in the bank account, Mona had the burden of proving that she was "a party" to the joint account. See §§ 30-2701(7) and 30-2704. Both the signature card and § 30-2705 require that in order to change the form of an existing joint account, "a party" must give the bank a signed written order. Adding a party to an account would change the form of the account. Thus, in order to successfully "change the form" of the existing joint bank account and add Mona as "a [third] party," it was necessary for Winona to give the bank a signed written order. Because the only instructions given to the bank were Winona's oral instructions, Mona was not "a party" to the account and had no survivorship rights under § 30-2704. Accordingly, we affirm the district court's judgment granting Neil's motion for summary judgment.

AFFIRMED.