IVORIE PEARL NEWMAN, PERSONAL REPRESENTATIVE OF THE
ESTATE OF JOHN HENRY M. CHAMBERLIN, DECEASED,
APPELLEE, V. ALFRED THOMAS, APPELLANT.
652 N.W.2d 565

Filed October 25, 2002. No. S-01-939.

Robert C. McGowan, Jr., of McGowan & McGowan, for appellant.

Michael D. McClellan, of Nelson McClellan, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In this case, we must decide whether the Nebraska Probate Code requires the owner of a non-pay-on-death, single-party account to give his or her financial institution signed written notice to add a pay-on-death (POD) beneficiary to the account. Before his death, John Henry M. Chamberlin opened a single-party certificate of deposit account (CD) with no POD beneficiary at American National Bank (American National). Although there is some evidence that Chamberlin attempted to add the appellant, Alfred Thomas, as a POD beneficiary, it is undisputed that Chamberlin did not give American National signed written notice. The district court ruled that Chamberlin's signed written notice was required and entered summary judgment for Ivorie Pearl Newman, the personal representative of Chamberlin's estate. We affirm.

## I. BACKGROUND

In May 1997, Chamberlin opened a non-POD, single-party CD with American National. A standard form was used to open

the CD. Consistent with its normal practice, American National gave Chamberlin the original form and retained two copies for its records.

Chamberlin died on April 16, 1999. His will named his sister, Newman, as the personal representative. On August 31, Newman requested American National to deposit the proceeds of the CD into an estate checking account at American National. American National then deposited about $50,000, the proceeds of the CD, into the estate checking account. At the time the funds were deposited, Newman was not aware of any other claims on the CD.

Thomas had been Chamberlin's friend and had helped Chamberlin with errands and household chores. After Chamberlin's death, Thomas arrived at an American National branch and claimed that before Chamberlin's death, he had made Thomas a POD beneficiary to the CD. When Thomas arrived at American National, he presented the original form issued to Chamberlin when he opened the CD. On the area of the form designated for the names of POD beneficiaries, someone had typed "POD ALFORD THOMAS [sic]." Someone had also placed a handwritten "x" in the box labeled "Single Party Account with Pay on Death." Notably, next to this box is a space for the owner's initials. This space is blank.

As noted above, American National retained two copies of the form used when Chamberlin opened the CD. "POD ALFORD THOMAS" and the handwritten "x" do not appear on either of these copies. No one at American National knows who made the changes. In addition, American National has no other document or record indicating that Chamberlin requested that Thomas be made a POD beneficiary to the CD.

Thomas claims that an American National employee, Patrice Smith, was responsible for making the handwritten "x" and typing "POD ALFORD THOMAS." According to Thomas' deposition testimony, in January or February 1998, he drove Chamberlin to an American National branch so that Chamberlin could withdraw interest from the CD. While there, Chamberlin met with Smith. Thomas claims he was present throughout this meeting and that during the meeting, Chamberlin orally requested that Thomas be added as the POD beneficiary to the CD. Thomas stated that Chamberlin then handed Smith the original form used

to open the CD and that she "typed something" on it. Thomas also claimed that Chamberlin signed at least one and perhaps two documents during the meeting. Thomas admitted, however, that he did not notice what Chamberlin was signing.

Chamberlin's signature appears three times on the original form used to open the CD. Two of these signatures were clearly made when the account was opened. The third signature is under a notation made on the second page. The notation refers to a withdrawal of interest made on January 7, 1998. The notation contains no reference to the addition of Thomas as a POD beneficiary.

In her deposition, Smith said that she does not remember the January 1998 meeting with Chamberlin. She also testified that she does not know if she made the handwritten "x" or typed "POD ALFORD THOMAS."

After Thomas attempted to claim the CD, American National froze the estate checking account into which it had previously deposited the proceeds from the CD. Newman then filed this declaratory judgment action against American National and Thomas. American National filed a motion seeking leave to deposit the disputed funds into court. The court granted the motion and dismissed American National.

Newman moved for summary judgment. At the summary judgment hearing, Thomas filed an affidavit under Neb. Rev. Stat. § 25-1335 (Reissue 1995) seeking a continuance so that Thomas could have an expert analyze whether Smith's typewriter had been used to type "POD ALFORD THOMAS." The court treated the affidavit as a motion to resist summary judgment.

The court entered summary judgment for Newman. It held that to change Chamberlin's CD to a POD account, the Nebraska Probate Code required him to give signed written notice to American National requesting that the bank add Thomas as a POD beneficiary. Because there was no evidence that Chamberlin had given signed written notice to American National, the court granted Newman summary judgment. Thomas appealed.

## II. ASSIGNMENTS OF ERROR

Thomas assigns, rephrased and reordered, that the district court erred in (1) interpreting and applying the applicable provisions of the Nebraska Probate Code, (2) granting Newman's

motion for summary judgment, and (3) failing to order a continuance of the summary judgment hearing.

## III. STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *American Fam. Mut. Ins. Co. v. Hadley, ante* p. 435, 648 N.W.2d 769 (2002).

■ Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *American Bus. Info. v. Egr, ante* p. 574, 650 N.W.2d 251 (2002); *A-1 Metro Movers v. Egr, ante* p. 291, 647 N.W.2d 593 (2002).

## IV. ANALYSIS

### 1. INTERPRETATION OF APPLICABLE PROVISIONS OF NEBRASKA PROBATE CODE

Article 27 of the Nebraska Probate Code governs nonprobate transfers, including POD accounts. See Neb. Rev. Stat. §§ 30-2715 through 30-2746 (Reissue 1995). In 1993, the Legislature repealed the previous version of article 27 and replaced it with a version based on the revised article VI of the Uniform Probate Code. The revised version of article 27 governs this case.

Under the revised article 27, when the owner of a POD, single-party account dies, the sums on deposit belong to the surviving beneficiary or beneficiaries. § 30-2723(b)(2). A non-POD, single-party account, however, is not affected by the death of the owner. Instead, the amount the owner was beneficially entitled to immediately before death is transferred to the estate. § 30-2723(c). If Chamberlin's CD was a POD, single-party account with Thomas as the beneficiary, Thomas is entitled to the proceeds from the CD. But, if Chamberlin never successfully added Thomas as the CD's POD beneficiary, then Chamberlin's estate is entitled to the proceeds.

The district court determined that § 30-2724 governs changing a non-POD, single-party account into a POD account. Section 30-2724 provides:

(a) Rights at death under section 30-2723 are determined by the type of account at the death of a party. *The type of account may be altered by written notice given by a party to the financial institution to change the type of account or to stop or vary payment under the terms of the account. The notice must be signed by a party and received by the financial institution during the party's lifetime.*

(Emphasis supplied.) The court interpreted the emphasized language as making the signed written notice of a party to the account a mandatory requirement for changing the type of account.

Thomas claims that the court made two errors in interpreting § 30-2724. First, he claims that the language sets out a permissive rather than a mandatory method for changing the type of account. Second, he argues that even if the language of § 30-2724 is mandatory, the section applies only to the modification of an existing multiparty or POD account and not to the creation of a multiparty or POD account. We disagree with both of these arguments.

(a) Is Language of § 30-2724 Mandatory?

Thomas argues that the use of the word "may" in § 30-2724 sets out a permissive rather than a mandatory method for altering the type of account. See Neb. Rev. Stat. § 49-802(1) (Reissue 1998) ("[w]hen the word may appears, permissive or discretionary action is presumed"). Newman counters that "may" in § 30-2724 refers only to the ability of a party to alter the form of his or her account. She argues that § 30-2724 is permissive in the sense that a party may choose to change his or her account from one form to another. But, to put the change into effect, the party must give his or her financial institution signed written notice.

■ In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Capital City Telephone v. Nebraska Dept. of Rev., ante* p. 515, 650 N.W.2d 467 (2002). Neither Thomas' nor Newman's

construction of § 30-2724 is facially unreasonable. We note that other courts are split on whether similar statutory language is permissive or mandatory. Compare *Linehan v. First Nat. Bank of Gordon*, 7 Neb. App. 54, 579 N.W.2d 157 (1998) (construing predecessor to § 30-2724 as mandatory), *Conservatorship of Milbrath*, 508 N.W.2d 360 (N.D. 1993), and *Estate of Wolfinger v. Wolfinger*, 793 P.2d 393 (Utah App. 1990), with *Jampol v. Farmer*, 259 Va. 53, 524 S.E.2d 436 (2000). We thus resort to statutory interpretation.

■ Initially, we note that the Legislature has instructed us to construe the provisions of article 27 so as "to effectuate their general purpose to make uniform the law of those states which enact them." § 30-2746. Section 30-2724 corresponds to § 6-213 of the revised article VI of the Uniform Probate Code. (We note that there has been a technical amendment to § 6-213, which Nebraska has not adopted.) Nine other jurisdictions have adopted § 6-213. Unif. Multiple-Person Accounts Act, Table of Jurisdictions Wherein Act Has Been Adopted, 8B U.L.A. 1 (Supp. 2002) (listing jurisdictions which have enacted Multiple-Person Accounts Act portion of revised article VI). None of these jurisdictions appear to have addressed whether the method set out for altering the type of account in § 6-213 is mandatory.

However, § 6-105 of the prerevision version of article VI, the predecessor of § 6-213, contained the same "may be altered" language that appears in §§ 6-213 and 30-2724:

[The form of the account] *may be altered* by written order given by a party to the financial institution to change the form of the account . . . . The order or request must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

(Emphasis supplied.) Unif. Probate Code § 6-105, 8 U.L.A. 474 (1998). Because of the similarity between §§ 6-105 and 6-213, the manner in which courts have interpreted § 6-105 is persuasive in predicting how courts will interpret § 6-213. The majority of courts interpreting provisions based on § 6-105, including the Nebraska Court of Appeals, have determined that the language in § 6-105 sets out a mandatory method for altering the form of an account. *Linehan v. First Nat. Bank of Gordon,*

*supra; Conservatorship of Milbrath, supra; Estate of Wolfinger v. Wolfinger, supra.* But see *Jampol v. Farmer, supra* (language is permissive).

▪ Moreover, construing § 30-2724 as setting out a mandatory notice requirement is more consistent with our standards of statutory construction and with the policies underlying article 27. In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Capitol City Telephone v. Nebraska Dept. of Rev., supra.* A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Sydow v. City of Grand Island,* 263 Neb. 389, 639 N.W.2d 913 (2002). As an aid to statutory interpretation, appellate courts must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.; Fontenelle Equip. v. Pattlen Enters.,* 262 Neb. 129, 629 N.W.2d 534 (2001).

To construe § 30-2724 as permissive would be to render the statute meaningless. It would neither create new rights nor limit existing ones. Any other method for modifying a contract would remain available to alter the form of an account. Signed written notice would simply be a nonbinding legislative suggestion.

▪ By contrast, to read § 30-2724 as setting out a mandatory method for altering the type of an account gives the statute a purpose consistent with the rest of article 27. Article 27 is designed to provide simple nonprobate alternatives for the disposition of assets upon death of a party to a multiparty or POD account. Accord *Conservatorship of Milbrath,* 508 N.W.2d 360 (N.D. 1993). Requiring signed written notice to alter the type of account furthers this purpose by ensuring clear evidence of the account owner's intent, thus preventing fraud and adding certainty to nonprobate transfers.

▪ We conclude that the use of the word "may" in § 30-2724(a) grants a party the right to alter the type of account the party owns. To exercise that right, however, a party must give his or her financial institution signed written notice.

### (b) Does § 30-2724 Apply to Transforming Non-POD, Single-Party Account Into POD Account?

Thomas argues that even if § 30-2724 sets out a mandatory method for altering the type of account, it applies only to altering an existing multiparty or POD account, not to transforming a non-POD, single-party account into a POD account.

 The scope of § 30-2724 is set out in the statute's first sentence: *"Rights at death under section 30-2723* are determined by the type of account at the death of a party." (Emphasis supplied.) This language means that § 30-2724 applies to an account if § 30-2723 sets out what rights at death accompany that type of account. Section 30-2723(c) sets out what rights at death a non-POD, single-party account carries: "Sums on deposit in a single-party account without a POD designation . . . are not affected by death of a party, but the amount to which the decedent, immediately before death, was beneficially entitled under section 30-2722 is transferred as part of the decedent's estate." Thus, § 30-2724 includes within its scope non-POD, single-party accounts.

 Thomas' interpretation of § 30-2724 is inconsistent with the purpose underlying the revised article 27. As noted, article 27 was substantially based on the revised article VI of the Uniform Probate Code. The revised article VI has three separate parts, each of which is designed to be a free-standing uniform act. The Uniform Multiple-Person Accounts Act is the second part of the Uniform Nonprobate Transfers on Death Act, which in turn corresponds to §§ 30-2716 through 30-2726 of article 27. The prefatory note to the Uniform Multiple-Person Accounts Act does not draw a distinction between single and multiparty accounts. Instead, it states that the purpose of the act is to *"comprehensively* [cover] the problems of financial institution accounts in which *one* or more persons have an interest." (Emphasis supplied.) Unif. Multiple-Person Accounts Act, Prefatory Note, 8B U.L.A. 4 (2001). Under Thomas' interpretation of § 30-2724, however, article 27 is not comprehensive. Rather, it leaves a potentially problematic issue—the proper method for adding a POD beneficiary to a non-POD, single-party account—completely outside the scope of article 27.

Thomas relies on *Linehan v. First Nat. Bank of Gordon*, 7 Neb. App. 54, 579 N.W.2d 157 (1998). In *Linehan*, a husband and wife opened a joint bank account. Later, the wife orally requested that the bank add her daughter to the account. The bank permitted the daughter to sign the original signature card. After the wife died, the husband attempted to withdraw the funds from the account and the daughter objected. The Court of Appeals ruled that to change the form of an *existing joint* account, the owner must give the bank a signed written order. The *Linehan* court went on to state that "[t]here is no statutory restriction in the Nebraska Probate Code which prohibits a party from orally instructing his or her bank to change the party's *individual* account into a joint account." (Emphasis in original.) 7 Neb. App. at 59, 579 N.W.2d at 160. See, also, *Estate of Wolfinger v. Wolfinger*, 793 P.2d 393 (Utah App. 1990).

*Linehan*, however, was governed by the pre-1993 version of article 27. See Neb. Rev. Stat. §§ 30-2701 through 30-2714 (Reissue 1989). The section of the previous article 27 that corresponds to § 30-2724 is § 30-2705. It provided in part: *"The provisions of section 30-2704 as to rights of survivorship* are determined by the form of the account at the death of a party." (Emphasis supplied.) § 30-2705. So, just as § 30-2724 refers to § 30-2723 to define its scope, the scope of § 30-2705 was set by reference to another section, § 30-2704. Unlike § 30-2723, § 30-2704 did not speak to what rights at death a non-POD, single-party account carried. Instead, it only addressed what survivorship rights accompany POD and multiparty accounts. Given this, the *Linehan* court logically concluded that the scope of § 30-2705 did not include changing a non-POD, single-party account into a multiparty or POD account. However, the inclusion of non-POD, single-party accounts in § 30-2723 expands the scope of § 30-2724 beyond that of its § 30-2705 predecessor and means that signed written notice is now required for transforming a non-POD, single party account into a multiparty or POD account.

### 2. SUMMARY JUDGMENT

The party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists.

That party must therefore produce enough evidence to demonstrate his or her entitlement to a judgment if the evidence remains uncontroverted, after which the burden of producing contrary evidence shifts to the party opposing the motion. *Richmond v. Case, ante* p. 319, 647 N.W.2d 90 (2002).

In this case, it is undisputed that Chamberlin opened the CD as a single-party account with no POD beneficiary. As we have set out above, to add Thomas as a POD beneficiary, § 30-2724 required Chamberlin to give American National signed written notice of the desired change. To meet her burden on summary judgment, Newman, as the moving party, was required to present evidence that no such notice was given. She met this burden in the form of deposition and affidavit testimony from American National officers stating they had no record of signed written notice from Chamberlin requesting American National to add Thomas as the CD's POD beneficiary. The burden then switched to Thomas to present evidence that signed written notice was given. But, the record contains no evidence—and Thomas does not even attempt to argue—that Chamberlin gave the notice required by § 30-2724. Thus, Thomas failed to meet his burden and the district court properly entered summary judgment for Newman.

### 3. CONTINUANCE OF SUMMARY JUDGMENT HEARING

Finally, Thomas assigns as error the district court's failure to continue the summary judgment hearing. A continuance authorized by § 25-1335 is within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Eastroads, Inc. v. City of Omaha*, 237 Neb. 837, 467 N.W.2d 888 (1991). Thomas sought the continuance so that he could have an expert inspect Smith's typewriter to see if it had been used in typing "POD ALFORD THOMAS" on the original form used to open the CD. But, whether Smith typed "POD ALFORD THOMAS" is irrelevant. Even if she did type it, it would not change the answer to the determinative issue whether Chamberlin gave American National the signed written notice required by § 30-2724. As a result, this assignment of error is without merit.

## V. CONCLUSION

We determine that to add a POD beneficiary to a non-POD, single-party account, the owner of the account must give signed written notice to his or her financial institution. Because Thomas has failed to present any evidence showing that Chamberlin gave signed written notice to American National requesting the bank to add Thomas as a POD beneficiary to Chamberlin's CD, Newman was entitled to summary judgment.

AFFIRMED.