97 P.3d 103 (2004)
209 Ariz. 3
In the Matter of the ESTATE OF Florence E. MOORE, Deceased.
Cheryl McHatton; Christine Ilseman, Petitioners-Appellants,
v.
John Ribeiro, Respondent-Appellee.
No. 1 CA-CV 03-0422.
Court of Appeals of Arizona, Division 1, Department E.
September 14, 2004.
*104 J. Jeff Richardson, P.C. By J. Jeff Richardson, Tempe, Attorneys for Petitioners-Appellants.
Murphy Law Firm, Inc. By Thomas J. Murphy, Phoenix, Attorneys for Respondent-Appellee.

OPINION
NORRIS, Judge.
¶ 1 Frequently, a person who opens a checking or savings account with a financial institution will direct the institution to distribute *105 the monies in the account to a designated beneficiary upon the account owner's death. Such an account is known as a payable-on-death ("P.O.D.") account and allows the account owner to transfer property outside the probate process. When the sole owner of a P.O.D. account dies, the account monies belong to the P.O.D. beneficiary and not to the owner's estate.
¶ 2 The Arizona probate code governs P.O.D. accounts. Under the probate code, to change the form of an account or to add or remove a P.O.D. designation to an account, the account owner must comply with certain statutory formalities.
¶ 3 The issue presented in this case is whether an owner of two P.O.D. accounts, who failed to comply with these statutory requirements, could revoke the P.O.D. designation by executing a declaration of trust, declaring herself trustee of the accounts and assigning the accounts to her trust. We hold the account owner was required to comply with the statutory formalities, and because she failed to do so, the P.O.D. beneficiary became entitled to the monies in the accounts when the account owner died.

FACTS AND PROCEDURAL BACKGROUND
¶ 4 Florence Moore met John W. Ribeiro in 1970. Moore and Ribeiro lived together until Moore's death in September 2001, at age 83. Several years before she died, Moore established a close relationship with her granddaughters, Cheryl McHatton and Christine Ilseman.
¶ 5 On October 19, 1987, Moore opened an account with Valley National Bank. She signed an account agreement/signature card that identified Ilseman as a P.O.D. beneficiary.[1] On November 6, 1987, Moore opened a second account with the bank. That account was added to the signature card.
¶ 6 In 1990, Moore executed a revocable trust naming herself as trustee and Ribeiro as her successor trustee. This 1990 trust granted Ribeiro a life estate in the home he shared with, but was owned by Moore, and distributed the remainder of the trust assets to McHatton, Ilseman and two other grandchildren. In 1993, Moore amended the trust and substantially revised the provisions directing how the trust estate was to be distributed upon her death.
¶ 7 On January 29, 1994, Moore executed a new revocable trust and restated these provisions with little change. As before, she named herself trustee and Ribeiro as her successor trustee. She also signed a "Schedule of Property for Moore Revocable Trust." This schedule assigned the following property to the trust:
1. All property that was in the Moore Revocable Trust dated February 8, 1990, as amended on September 13, 1993.
2. All real property owned by Trustor, including her homestead at 7231 East Terrace Road, Tempe, Arizona.
3. All Trustor's bank accounts.
4. All Trustor's securities, stocks, bonds and mutual funds.
¶ 8 Additionally, Moore executed a will naming Ribeiro as her personal representative, and appointed him as her attorney-in-fact under a durable power of attorney.[2]
¶ 9 Moore's trust granted Ribeiro a limited power to appoint the trust estate to himself, Ilseman, McHatton and a charity. This power of appointment read as follows:
John Ribeiro shall have a limited power to appoint the remaining balance of the Trust Estate to himself, Christine Ilseman, Cheryl McHatton and the City of Hope subject to the following conditions:
a. The power of appointment must be exercised, if at all, on or before the date which is ninety days after Trustor's death, and it must be exercised by a written instrument specifically referring to the Moore Revocable Trust and this power of appointment.

*106 b. The Trust Estate may be distributed in unequal shares by the power of appointment, and need not be distributed to all of the appointees; provided, however, that the share for John Ribeiro may be no larger than the combined shares of Christine Ilseman and Cheryl McHatton. The share for John Ribeiro may be less than the combined shares of Christine Ilseman and Cheryl McHatton, and it is the trustor's desire, but not the trustor's direction, that John Ribeiro, Christine Ilseman and Cheryl McHatton receive equal shares.
¶ 10 On March 3, 1997, slightly more than three years later, Moore transferred the money in the second account and deposited those funds, along with other money, into a third account she opened at Valley National Bank's successor, Bank One. The third account was added to the signature card Moore signed in 1987.
¶ 11 Moore died on September 19, 2001. She left an estate valued at approximately $3 million. Her estate consisted mostly of securities, certificates of deposit, real property and, at issue here, the money on deposit at Bank One in her first account ($25,648) and her third account ($1,023,600) (collectively, the "Bank One Accounts").
¶ 12 Moore's will was submitted to informal probate, and Ribeiro was appointed personal representative of Moore's estate. Ribeiro began the process of assembling all of the assets belonging to the trust estate. Ribeiro did not know about the P.O.D. designation on the signature card and, consequently, included the Bank One Accounts in the trust estate.
¶ 13 On December 16, 2001, after excluding certain assets as required by other provisions of the trust, Ribeiro exercised the power of appointment and distributed 45% of the trust estate to himself, 25% each to McHatton and Ilseman and 5% to the charity. Unhappy with the percentages of the trust estate distributed to them, in June 2002, McHatton and Ilseman requested the probate court to remove Ribeiro as Moore's personal representative and successor trustee. The granddaughters also requested the court invalidate Ribeiro's exercise of the power of the appointment.
¶ 14 Thereafter, during the course of discovery, Ilseman's and McHatton's attorney discovered that the signature card listed Ilseman as a P.O.D. beneficiary. Ilseman and McHatton then asserted that Ribeiro should distribute the monies in the Bank One Accounts to Ilseman, in accordance with the P.O.D. designation. Ribeiro refused.
¶ 15 The trial court conducted an evidentiary hearing regarding the validity of the P.O.D. designation and Ribeiro's exercise of the power of appointment.[3] Ribeiro asserted Moore had intended for the bulk of her estate, including the Bank One Accounts, to be distributed in accordance with the terms of her 1994 trust. Relying on what the parties came to call the "Restatement Rule," Ribeiro argued the Bank One Accounts had become trust property because, when Moore established the trust, she had executed the schedule of property and assigned "[a]ll [her] bank accounts" to the trust.
¶ 16 The parties' reference to the Restatement Rule was shorthand for Section 17(a) of the Restatement (Second) of Trusts (1959). Section 17(a) states a trust may be created by "a declaration by the owner of property that he holds it as trustee for another person." Comment (a) to that section of the Restatement goes on to explain that if the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property. The thrust of Ribeiro's argument under the Restatement Rule was that in 1994, when Moore declared herself trustee of all her bank accounts and assigned those accounts to *107 her trust, her trust became owner of the Bank One Accounts free and clear of the P.O.D. designation.
¶ 17 Robert White, the attorney who prepared Moore's 1990 trust, 1993 trust amendment and 1994 trust, Ribeiro and the granddaughters testified at the hearing. Kathy Swan, the Bank One employee who opened the third account for Moore in 1997, also testified.
¶ 18 White, Ribeiro and the granddaughters generally described Moore as being in control of, but secretive about her assets. White testified Moore had never "indicated" to him she had any bank accounts with survivorship rights, had intended to transfer all her assets to the trust and had signed the schedule of property to show her intent to do so.
¶ 19 Ribeiro testified he had taken care of Moore during the last several years of her life. He assisted her with her banking by providing what was essentially clerical help. Ribeiro recorded checks and completed deposit slips. He deposited checks made payable to Moore or to her trust in the third account because that account earned better interest. He reconciled Moore's bank statements and placed them on her bedside table so she could look at them before putting them away. Ribeiro did not know about the P.O.D. designation, and during the entire time he assisted Moore with her banking, believed the third account belonged to her trust. Had he known about the P.O.D. designation he would not have deposited any checks into that account because he believed that was "not the way [Moore] would have wanted her property to go."
¶ 20 McHatton and Ilseman both testified that Moore said very little to them about her assets. However, when Moore bought McHatton a house in 1993, she told McHatton "that because she had bought that house [for her] she had left the account for Chris when she passed away." Ilseman also testified that after Moore bought the house for McHatton, Moore told her "[t]here is an account in your name and, when I die, you know, you just have to go and present yourself and identify yourself to get it right there."[4]
¶ 21 Swan had no recollection of opening the third account for Moore. She simply testified that in 1997, it would have been her practice to go over the signature card with Moore and "review everything that we have to see if its correct." Swan stated she would not have added a new account to an existing signature card with a P.O.D. designation without confirming that the customer wanted the new account to be payable on death.
¶ 22 The trial court ruled in Ribeiro's favor, finding it would have been "illogical" for Moore to "knowingly leave one granddaughter her entire estate while cutting off her partner and other granddaughter." The court explained:
Ms. Moore obviously loved and respected Mr. Ribeiro. She designated him as her Power of Attorney, Personal Representative, primary Beneficiary and Trustee. As her health declined, he managed all of her business affairs and cared for her as the primary care giver until her death. Mr. Ribeiro made the majority of deposits into [the third account] with the honest belief that the funds were in a trust account. Mr. Ribeiro also welcomed the granddaughters into their family unit until it became clear that they wanted the entirety of the bank assets with no consideration for the man who was their grandmother's partner for more than 35 years. If the court considered the POD designation alone, it would result in a biological granddaughter receiving the bulk of the estate that was clearly intended to be split between the parties. It is illogical to consider that Florence Moore would knowingly leave one granddaughter her entire estate while cutting off her partner and other granddaughter.
¶ 23 Relying on the Restatement Rule and two cases from other jurisdictions applying *108 that rule, the court held Moore's trust documents superseded the P.O.D. designation:
Even if the signature card originally executed by Ms. Moore in 1987 applied to the later accounts, the execution of the trust documents superceded [sic] the POD payee designation. Although preferable, there is no requirement that a separate writing must be prepared to transfer property to a Trust. See Estate of Heggstad, 16 Cal.App.4th 943, 20 Cal.Rptr.2d 433 (CA1 1993), Taliaferro v. Taliaferro, 260 Kan. 573, 921 P.2d 803 (1996) and Restatement Second of Trusts, §§ 2,17.
¶ 24 The court entered a judgement invalidating the P.O.D. designation and affirming Ribeiro's exercise of the power of appointment. This appeal followed.

DISCUSSION
¶ 25 On appeal, the granddaughters mount a two-prong attack on the trial court's judgment invalidating the P.O.D. designation. First, they urge us to reject the Restatement Rule and hold that before property can be held in trust, title to the property must be conveyed to the trustee. Second, they assert that if we uphold the Restatement Rule, it must give way to the provisions of the Arizona probate code providing that on the death of an owner of an account with a P.O.D. designation, the account monies belong to the P.O.D. beneficiary. We disagree with the granddaughters' first argument, but agree with their second argument. We hold the Arizona probate code provisions governing accounts control this case and the disposition of the Bank One Accounts.
¶ 26 The arguments raised by the granddaughters present questions of law, which we review de novo. Stallings v. Spring Meadows Apt. Complex, Ltd. P'ship, 185 Ariz. 156, 158, 913 P.2d 496, 498 (1996). However, we apply a different standard of review to a trial court's factual findings, and will sustain such findings unless clearly erroneous or unsupported by any credible evidence. Imperial Litho/Graphics v. M.J. Enterprises, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986).

A. The Restatement Rule
¶ 27 "The essential elements of a trust are a competent settlor and/or trustee, a clear and unequivocal intent to create a trust, an ascertainable trust res, and sufficiently identifiable beneficiaries." Golleher v. Horton, 148 Ariz. 537, 543, 715 P.2d 1225, 1231 (App.1996). Under well established principles, a trust may be created by declaration. This happens when the owner of property declares he or she will hold the property as trustee for the benefit of another. As discussed above, this is the rule followed by the Restatement.
¶ 28 When a trust is created by declaration, there is no actual transfer of property. This is because, before the declaration, the trustor held legal title to the property and after the declaration, continues to hold legal title to the property. Under the Restatement Rule, "[i]f the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property." Restatement (Second) of Trusts § 17 cmt. a (1959).
¶ 29 Arizona follows the Restatement Rule. In Barnette v. McNulty, 21 Ariz.App. 127, 516 P.2d 583 (1973), relying on the Restatement Rule, the court held a stockholder could make himself trustee of stock through an oral or written declaration of trust without delivering any document to the beneficiary or making any change in the corporation's records showing ownership of the stock. The court further explained:
We have been considering the situation that arises when the owner of property conveys it to another person as Trustee. Where he declares himself as Trustee of the property, however, it is obvious that the delivery of the subject matter to the beneficiary is neither necessary nor appropriate. Since his intention is to retain title to the property, although he is to hold it for the benefit of another, it is clear that it would be inconsistent with his intention for him to surrender the property.
Id. at 129, 516 P.2d at 585 (quoting Scott on Trusts § 32.5 (3d ed.)).
¶ 30 If the Restatement Rule governed the outcome of this case, Moore did not need to *109 transfer title to the Bank One Accounts to her trust in order to hold those assets in trust. But the Restatement Rule is not the only rule in play here. Thus, we come to the granddaughters' second argument  that the Arizona statutes pertaining to accounts, and not the Restatement Rule, control disposition of the Bank One Accounts and, under those statutes, Ilseman was entitled to all of the money in the Bank One Accounts.

B. The Multiple-Person Account Act
¶ 31 An "account" is a contract of deposit between a depositor and a financial institution. Arizona Revised Statutes ("A.R.S.") § 14-6201(1)(2003).[5] An account includes, for example, a checking account, a savings account or a certificate of deposit. Id. When opening an account, a depositor may direct that, upon his or her death, the monies in the account will pass to a designated beneficiary. Such a contractual arrangement, known as a non-probate transfer, allows the account monies to pass outside the probate process. An account subject to a P.O.D. designation is a form of will substitute. UNUM Life Ins. Co. of Am. v. Craig, 200 Ariz. 327, 334, ¶¶ 33-34, 26 P.3d 510, 517 (2001). By state statute, such a contractual arrangement is deemed nontestamentary and exempted from the formalities applicable to the execution of wills. A.R.S. § 14-6101(A) (2003); UNUM, 200 Ariz. at 334, ¶¶ 33-34, 26 P.3d at 517.
¶ 32 The statutes governing accounts are contained in the Arizona probate code, A.R.S. § 14-6201 through 6227 (2003) ("Account Act"). Arizona's Account Act is based on the Uniform Multiple-Person Accounts Act § 6-201 through 227, 8 U.L.A. 433 (1998) ("Uniform Act"). The Account Act resolves pre-death as well as post-death issues regarding the rights in an account between the owner of the account and, on the owner's death, any P.O.D. beneficiary.
¶ 33 There are two types of accounts: single party and multiple party accounts. A single party account is owned by one party; a multiple party account is owned by more than one party. A.R.S. § 14-6203(A); 14-6201(5). Both types of accounts may have a P.O.D. designation. A.R.S. § 14-6203(A).
¶ 34 "Party" is a defined term. It means a person who "by the terms of an account and subject to a request, has a present right other than as a beneficiary or agent to payment from the account." A.R.S. § 14-6201(6). A party depositing funds in an account owns those funds during his or her lifetime. A.R.S. § 14-6211(A). A "beneficiary" of an account is "a person to whom sums on deposit in an account are payable on request after the death of all parties." A.R.S. § 14-6201(3). A beneficiary in an account having a P.O.D. designation has no right to sums on deposit during the lifetime of any party. A.R.S. § 14-6211(B). Thus, during a party's lifetime, a beneficiary of an account with a P.O.D. designation has no right to any of the monies in the account.
¶ 35 When the owner of a single party account with a P.O.D. designation dies, the monies in the account belong to the surviving beneficiary or beneficiaries. Section 14-6212(B)(2) states that in an account with a P.O.D. designation "[o]n the death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries." When the owner of a single party account without a P.O.D. designation dies, however, the sums on deposit are "transferred" to the decedent party's estate. A.R.S. § 14-6212(C).[6]
¶ 36 The granddaughters argue the trial court should have followed this statutory framework and awarded the monies in the Bank One Accounts to Ilseman. They assert Ilseman was a P.O.D. beneficiary of the Bank One Accounts and, on Moore's death, became entitled to all of the "sums on deposit" in the accounts. The trial court rejected their argument. In so many words, the trial court concluded Moore had rescinded the P.O.D. *110 designation by executing the declaration of trust and assigning "all" her bank accounts to her trust because "no ... separate writing [was necessary under the Restatement Rule] to transfer property to a trust." We disagree with the trial court. There is a separate writing requirement when, as here, a party attempts to transfer an account with a P.O.D. designation to his or her trust.
¶ 37 Section 14-6213(A) establishes the procedures an account owner must follow to change the type of account or to stop or vary the payment terms of an account. The account owner must give the financial institution signed written notice of the change and the notice must be received by the financial institution before the owner's death. Section 14-6213(A) reads as follows:
Rights at death under § 14-6212 are determined by the type of account at the death of a party. The type of account may be altered by written notice given by a party to a financial institution to change the type of account or to stop or vary payment under the terms of the account. The notice shall be signed by a party and received by the financial institution during the party's lifetime.[[7]]
¶ 38 Here, for whatever reason, either by design or oversight, Moore failed to comply with the statutory requirements imposed by A.R.S. § 14-6213(A). Without such compliance, Moore could not, through a declaration of trust, strip the P.O.D. designation from the Bank One Accounts and transform what had been P.O.D. accounts into non-P.O.D. accounts.
¶ 39 The Restatement Rule is a rule of general applicability. It merely sets out one way a trust may be created. It does not address the problem presented in this case. Section 14-6213(A) establishes the procedures an account owner must follow to change an account or vary its terms. The Restatement Rule does not.
¶ 40 Our interpretation of the Account Act provisions discussed above is buttressed by two appellate court decisions, one by this Court in 1994, and the other by the Nebraska Supreme Court in 2002.
¶ 41 In Jordan v. Burgbacher, 180 Ariz. 221, 883 P.2d 458 (App.1994), a husband and wife executed a property settlement agreement and agreed to waive any rights they had to share in each other's estate. The husband owned several certificates of deposit in accounts at three different financial institutions. Id. at 223, 883 P.2d at 460. All of the signature cards listed the wife as the sole P.O.D. beneficiary. Id. at 226, 883 P.2d at 463-64. The husband died, and his personal representative asserted the wife was not entitled to the certificates of deposit as a P.O.D. beneficiary, and, in any event, had given up her claim by entering the property settlement agreement. Id. at 225, 883 P.2d at 462-63. The court rejected both arguments. Id. at 228, 883 P.2d at 465.
¶ 42 The court held that the provisions of the Arizona probate code governing accounts then in effect controlled whether the wife was a P.O.D. beneficiary of the husband's accounts.[8]Id. at 225, 883 P.2d at 462-63. *111 The wife would be the P.O.D. payee for each account, the court explained, "if she was designated in the contract of deposit of funds between decedent and the depository bank as the person to whom the account was payable on request after his death." Id. at 226, 883 P.2d at 463.
¶ 43 In so holding, the court rejected the personal representative's argument that the husband had removed the wife as a P.O.D. payee on an account at one of the banks by signing a letter addressed to the bank that purported to confirm a telephone request in which he had asked the bank to remove her from the account. Id. at 227, 883 P.2d at 464. The bank did not have the original or a copy of the letter. Id. Relying on the statute that then governed the procedures for stopping or varying payment terms of accounts,[9] the court rejected the personal representative's argument that these facts constituted sufficient evidence from which a jury could find the bank had received the decedent's change request:
The question whether the account holder intended or attempted to communicate an account change order to the bank is not material under A.R.S. section 14-6105. It is the receipt of the written order by the bank that is material.
Id. at 227, 883 P.2d at 464.
¶ 44 From Jordan, we take the following principle  to change the type of account or vary its payment terms, the account owner must follow the statutory requirements.
¶ 45 In Newman v. Thomas, 264 Neb. 801, 652 N.W.2d 565 (2002), the issue was whether the owner of a non-P.O.D., single person account had to give written notice to his bank to add a P.O.D. beneficiary designation. Although Newman presents the converse of the situation presented here, the court's resolution of this question is instructive and consistent with our decision in Jordan. The Newman court was required to construe Nebraska's account statutes, which were virtually identical to the Arizona statutes interpreted in Jordan. See note 8 supra.
¶ 46 In Newman, although there was some evidence that the owner of the account had attempted to add a P.O.D. payee to the account before his death, it was undisputed the bank had never received the written notice required under the Nebraska statute. The court held that to add a P.O.D. beneficiary to a non P.O.D. single person account, the owner was required to give signed written notice to the financial institution. Id. at 571, 573. The court explained that to construe the statute as permissive would
be to render the statute meaningless. It would neither create new rights nor limit existing ones. Any other method for modifying a contract would remain available to alter the form of an account. A signed, written notice would simply be a non-binding legislative suggestion.
By contrast, to read § 30-2724 as setting out mandatory methods for altering the type of an account gives the statute a purpose consistent with the rest of Article 27. Article 27 is designed to provide simple, non-probate alternatives for the disposition of assets upon death of a party to a multi-party or POD account. Requiring signed, written notice to alter the type of account furthers this purpose by ensuring clear evidence of the account owner's intent, thus preventing fraud and adding certainty to non-probate transfers.
Id. at 572 (citation omitted).
¶ 47 The Restatement Rule, we acknowledge, was not at issue in either Jordan or Newman. However, both decisions recognize the account statutes were intended to establish a simple, non-probate mechanism for the transfer of monies deposited in accounts with a P.O.D. designation. Just as the statutes that govern the validity of wills do, these statutes impose certain formalities that must be followed if the owner of an *112 account wishes to change the type or terms of an account.
¶ 48 The Restatement Rule does not allow an account owner to bypass these requirements. Our conclusion  that the Restatement Rule must give way to the account statutes at issue in this case  is consistent with the discussion of that rule set out in the most recent version of the Restatement. Section 10 of the Restatement (Third) of Trusts (2003) discusses the various methods for creating trusts. Section 10 provides, as did its predecessor, Section 17 of the Restatement (Second) Trusts, that a trust may be created by a "declaration by an owner of property that he or she holds that property as trustee for one or more persons." The Restatement (Third) recognizes, however, that although a trust created by declaration should be effective without additional legal formalities, there may be exceptions:

[E]xcept as precluded by statute, a trust may be established by the settlor's signing of an instrument that begins, essentially "I hereby declare myself trustee of the property listed in Schedule A attached hereto" or "O, as settlor, hereby transfers to O, as trustee, the property listed in the attached Schedule A," even though in either case the document is not supported at the time of execution, or by the time of the settlor's death or incompetency, by other acts or other documents of transfer or title. In short, the trust instrument may serve as an instrument of transfer (i.e., as a "deed" of gift or conveyance).
Restatement (Third) of Trusts § 10 cmt. e (2003) (emphasis added).
¶ 49 Finally, we reject Ribeiro's argument that we should affirm the trial court's decision because the provisions of the Account Act at issue here "do not deal [with] title or ownership," and, in any event, are inapplicable because, under A.R.S. § 14-6202(3)(2003), the Account Act does not apply to fiduciary or trust accounts.
¶ 50 First, the account statutes do, indeed, deal with "title or ownership." Section 14-6211 deals with ownership of an account while the party, that is the account owner, remains living. Section 14-6212 deals with ownership of an account on the death of a party.
¶ 51 Second, the Account Act is applicable here. Section 14-6202(3) exempts from the Account Act a "fiduciary or trust account in which the relationship is established other than by the terms of the account." Under this provision, an account is not subject to the Account Act if the relationship between the account owner and the financial institution is not established through a deposit agreement. The comment to Uniform Probate Code § 6-202, the uniform counterpart to A.R.S. § 14-6202, makes this clear: "[T]he reference to a fiduciary or trust account ... includes a regular trust account under a testamentary trust or a trust agreement that has significance apart from the account, and a fiduciary account arising from a fiduciary relation such as attorney-client." Here, Moore's "relationship" with Bank One was established through the deposit agreement.
¶ 52 Because Ilseman was entitled to the Bank One Accounts under the Account Act, we do not address the parties' arguments regarding Moore's intent. Based on the evidence presented to the trial court regarding what Moore said and did, it is questionable whether she intended the P.O.D. designation to result in one of her granddaughters receiving so much of her estate. However, effectuating what may have been Moore's intent would require us to disregard the requirements of our statutes governing accounts. "In this connection, it must be recognized that the enforcement of many Arizona statutes involving the disposition of property can lead to results completely contrary to the intent of the party making a disposition of his property." Estate of Muder, 156 Ariz. 326, 329, 751 P.2d 986, 989 (App.1987)(Haire, J., concurring). Moore failed to comply with the requirements of the Account Act, and these requirements control the outcome of this case.

C. Attorneys' Fees
¶ 53 The granddaughters have requested an award of attorneys' fees for this appeal under a provision in Moore's trust that authorizes the trustee to pay administrative *113 costs. Alternatively, they have also requested fees under A.R.S. § 12-341.01(A) (2003), which allows a court to award fees in an action "arising out of contract, express or implied." A court may, but is not required, to charge attorneys' fees to a trust estate for litigation necessary to the administration of the trust. Allard v. Pacific Nat'l Bank, 99 Wash.2d 394, 663 P.2d 104, 111 (1983). In deciding whether to charge the estate for such fees, a court should consider whether the party seeking fees "caused a benefit to the trust." Id. at 112. Here, the granddaughters recovered the Bank One Accounts from the trust for their own benefit. Consequently, we decline to charge Moore's trust with their attorneys' fees.
¶ 54 For the same reason, in the exercise of discretion, we deny their request for fees under A.R.S. § 12-341.01(A), even if we were to find that statute applicable in this case. See In Re Naarden Trust, 195 Ariz. 526, 990 P.2d 1085 (App.1999) (beneficiary's lawsuit against trustee for improper conduct not a contested action arising out of contract).

CONCLUSION
¶ 55 For the foregoing reasons, we reverse the trial court's judgment finding the Bank One Accounts were superseded by Moore's execution of the 1994 trust. We hold the monies in the Bank One Accounts belonged to Ilseman. We remand this matter to the trial court for further proceedings in conformity with this decision.
CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.
NOTES
[1] The trial court found Moore had designated Ilseman as a P.O.D. beneficiary when she opened the first account.
[2] Under the will, with the exception of personal property separately devised, the residue of Moore's estate "poured" into her trust.
[3] At the conclusion of the first day of the hearing, the parties stipulated to the replacement of Ribeiro as personal representative and successor trustee. The parties also discussed with the court whether the hearing could be limited to just the "POD matters" because, if the court found the Bank One Accounts were subject to the P.O.D. designation, there would be little or no assets left in the trust estate and the parties' dispute over Ribeiro's exercise of the power of appointment would be moot. Over the granddaughters' objection, however, the trial court proceeded to rule on the validity of Ribeiro's exercise of the power of appointment.
[4] Ribeiro confirmed Ilesman's testimony that she believed Moore had left her an account. Ribeiro acknowledged that immediately after Moore's death, and before Ilseman's attorney discovered the P.O.D. designation on the signature card, Ilseman asked him whether he was aware of any accounts payable on death to her. He told her "no."
[5] We cite to the current version of applicable statutes and uniform acts when no revisions material to this decision have occurred.
[6] Sections 14-6212(A) and (B) also govern the disposition of monies in a multiple party account with or without a P.O.D. designation on the death of a party. Those provisions are not relevant here. The Bank One accounts were single party accounts as Moore was the sole owner of and the only party to those accounts.
[7] The second sentence of § 14-6213(A) uses the word "may." Use of the word "may" does not set out a permissive rather than a mandatory method for varying payment terms of an account. The second sentence and the use of the word "may" simply means that a party has the discretion or right to vary payment under the terms of an account. The third sentence of the statute which states that the notice given by a party "shall be signed by a party and received by the financial institution during the party's lifetime" is mandatory, and the notice must be signed by a party and received by the financial institution to effectuate the change. When a statute contains both "shall" and "may" in the same provision, we infer the legislature acknowledged the difference and intended each word to carry its ordinary meaning. In re Maricopa County Superior Court No. MH XXXX-XXXXXX, 206 Ariz. 367, 369, ¶ 7, 78 P.3d 1088, 1090 (2003). We also ordinarily interpret "shall" to mean that a provision is mandatory while a "may" provision generally is interpreted as permissive. Id. See also Newman v. Thomas, 264 Neb. 801, 652 N.W.2d 565, 570-573 (2002), construing a statute virtually identical to A.R.S. § 14-6213(A) as setting out a mandatory notice requirement.
[8] In 1994, effective January 1, 1995, the state legislature substantially amended Arizona's probate code. 1994 Ariz. Sess. Laws Ch. 290, § 18. The amendments adopted the 1989 version of the Uniform Multiple-Person Accounts Act. The Arizona account statutes applied in Jordan were virtually identical to the pre-1989 version of what was then called the Uniform Multiple-Party Accounts Act. 8 U.L.A. 459 (Pre-1989 version).
[9] A.R.S. § 14-6105, repealed 1994 Ariz. Sess. Laws Ch. 290, § 17, read as follows:

Prior to death of a party, the form of an account may be altered by written order to change the form or to stop or vary payment under the terms of the account. The order must be signed by a party, received by the financial institution prior to the death, and not countermanded by other written order of the same party prior to the death. At the death of a party, rights of survivorship under section 14-6104 are determined by the form of the account at that time.