compensation. We therefore find that the district court did not err in denying Buck's motion for summary judgment and granting summary judgment in favor of the City.

Buck's directs our attention to *Maloley v. City of Lexington*, 3 Neb. App. 976, 536 N.W.2d 916 (1995), to support its position, but we find this reliance misplaced. In *Maloley*, the evidence established that the City of Lexington temporarily closed the street directly in front of the plaintiff's property. Here, there is no allegation that the City closed Stony Brook Boulevard, prohibiting access to Buck's. Rather, the City modified the median in the middle of Stony Brook Boulevard, which, according to *Painter v. State*, 177 Neb. 905, 131 N.W.2d 587 (1964), is the lawful exercise of the police power and is noncompensable.

## CONCLUSION

We conclude that the district court properly overruled the objections to the affidavits and received them into evidence. In addition, we find no error with respect to the district court's rulings on the parties' motions for summary judgment. Accordingly, we affirm.

Affirmed.

----

In re Estate of William Lorenz, deceased.
Theresa Lorenz, Personal Representative of the
Estate of William Lorenz, appellee,
v. Alice Shea, appellant.
___ N.W.2d ___

Filed December 2, 2014.    No. A-13-528.

1.  **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2.  **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
3.  **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court independently reviews.

4.  **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

5.  ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

6.  **Appeal and Error.** In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court.

7.  **Decedents' Estates: Final Orders.** Pursuant to Neb. Rev. Stat. § 30-2436 (Reissue 2008), subject to appeal and subject to vacation, a formal testacy order under Neb. Rev. Stat. §§ 30-2433 to 30-2435 (Reissue 2008) is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs.

8.  **Decedents' Estates: Wills: Judgments: Time: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 30-2437 (Reissue 2008), for good cause shown, an order in a formal testacy proceeding may be modified or vacated within the time allowed for appeal. Pursuant to Neb. Rev. Stat. §§ 30-1601(1) (Cum. Supp. 2014) and 25-1912(1) (Reissue 2008), notice of an appeal must be filed within 30 days after the entry of a final order.

9.  **Decedents' Estates: Executors and Administrators.** A personal representative and a special administrator can coexist; there is no requirement to petition to suspend or remove the personal representative as a prerequisite to filing a motion for the appointment of a special administrator.

10. **Appeal and Error.** Cases are heard in an appellate court on the theory upon which they were tried.

11. **Decedents' Estates.** A payable-on-death account passes outside the estate and belongs to the surviving beneficiary and not to the estate; therefore, pursuant to Neb. Rev. Stat § 30-2725 (Reissue 2008), such a transfer is not testamentary or subject to estate administration.

12. **Decedents' Estates: Time.** When a decedent's payable-on-death asset has been transferred outside his or her estate, Neb. Rev. Stat. § 30-2726 (Reissue 2008) provides the mechanism by which such nonprobate transfer may be recovered by the estate if the estate is not otherwise able to meet its obligations. To employ the process set forth in § 30-2726(b) to recover nonprobate transfers, a written demand must be made upon the personal representative and then a proceeding to recover those nonprobate assets must be commenced within 1 year of the decedent's death.

13. **Decedents' Estates: Executors and Administrators.** After a special administrator is appointed, the administrator has the same power as a personal representative, except the power is limited to the duties prescribed in the trial court's order.

14. **Decedents' Estates: Claims: Notice.** Claims filed against an estate set forth sufficient written demand pursuant to Neb. Rev. Stat. § 30-2726 (Reissue 2008) to put the personal representative on notice that nonprobate transfers may need to be collected for the estate to meet its obligations.

15. **Rules of the Supreme Court: Appeal and Error.** Assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012); an appellate court may, at its discretion, examine the proceedings for plain error.

16. **Decedents' Estates: Courts: Costs: Attorney Fees: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 30-1601(6) (Cum. Supp. 2014), if it appears to the Nebraska Court of Appeals that an appeal of a probate matter was taken vexatiously or for delay, the court shall adjudge that the appellant shall pay the cost thereof, including an attorney fee, to the adverse party in an amount fixed by the Court of Appeals.

Appeal from the County Court for Douglas County: Sheryl L. Lohaus, Judge. Affirmed as modified.

Jeffrey A. Silver for appellant.

Richard A. DeWitt, Robert M. Gonderinger, and David J. Skalka, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellee.

Inbody, Chief Judge, and Irwin and Bishop, Judges.

Bishop, Judge.

## I. INTRODUCTION

Alice Shea (Alice) is the ex-wife of decedent William Lorenz. The county court for Douglas County granted summary judgment in favor of the personal representative of William's estate (Estate) on two issues: (1) Alice's petition for the appointment of a special administrator and (2) her challenge to a codicil to William's will (Second Codicil). The county court concluded, in essence, that a request to remove a personal representative must precede a request for appointment of a special administrator and that Alice did not follow that procedure. The court further held that Alice made an untimely demand for the personal representative to compel beneficiaries of payable-on-death (POD) transfers to pay such transfers over to the Estate as a basis for the appointment of a special administrator. The court also held that Alice's challenge to the

validity of the Second Codicil was untimely. The court did find that Alice was entitled to claims made against the Estate, including: (1) interest for delinquent alimony; (2) alimony in the amount of $2,000 per month, commencing September 1, 2010, and continuing each month thereafter until she dies or remarries, whichever occurs first; and (3) interest in the amount of $129.78 on a late property settlement payment. Alice appeals; we affirm as modified.

## II. BACKGROUND

William passed away in Douglas County on February 20, 2010, at the age of 91. William left behind seven children. Alice is not the mother of any of William's children.

William was single at the time of his death, having been divorced from Alice since 2006. Pursuant to their Iowa divorce decree, and relevant to this appeal, William was ordered to pay Alice (1) a property settlement in the amount of $113,761 and (2) alimony in the amount of $2,000 per month until Alice dies or remarries. The decree provided, "In the event William predeceases Alice, this alimony award shall be a lien against" the Estate.

On May 4, 2010, Theresa Lorenz, one of William's children, filed a "Petition for Formal Probate of Will, Determination of Heirs, and Appointment of Personal Representative" in the matter of the Estate. The petition sought to admit William's "Last Will and Testament" dated June 6, 1989, and two codicils dated February 24, 2005, and May 11, 2007, to probate. The petition also sought to appoint Theresa as the personal representative of the Estate. A notice of the petition was published in the "Daily Record of Omaha" for 3 consecutive weeks in May 2010.

On June 24, 2010, the county court entered an order admitting the will and two codicils to formal probate as "valid, unrevoked and the last Will of [William]." The court also appointed Theresa as the personal representative of the Estate. In her affidavit filed on July 9, Theresa stated that she mailed a copy of the notice of the proceedings (albeit the notice was for "informal probate") to numerous interested parties, including Alice, on July 2.

On August 30, 2010, Alice filed three separate claims (all relating back to the 2006 divorce decree) against the Estate in the probate proceeding. The claims were for (1) future alimony in the amount of $2,000 per month for Alice's lifetime; (2) delinquent alimony as of August 1, 2010, in the amount of $6,000 plus interest; and (3) past due property settlement funds in the amount of $1,189.65 plus interest.

On September 23, 2010, Theresa, as personal representative, filed a "Short Form Inventory" of the "probate property" owned by William at the time of his death. The assets listed were (1) a checking account ($12,007.11), (2) an investment account ($100,163), and (3) household goods and furnishings and miscellaneous tangible personal property ($500). The total value of the probate property listed was $112,670.11. Nonprobate transfers were not listed on the inventory.

On October 28, 2010, Theresa disallowed all three of the claims Alice had filed on August 30.

Following the disallowance of her claims, on December 21, 2010, Alice filed a "Petition for Allowance of Claims, Appointment of Special Administrator Pursuant to Neb. Rev. Stat. §30-2457, and Challenge to Second Codicil" (Petition). (Emphasis omitted.) In the Petition, Alice alleged that on August 30, she filed three claims against the Estate in the probate proceeding, for (1) future alimony in the amount of $2,000 per month for Alice's lifetime; (2) delinquent alimony as of August 1, 2010, in the amount of $6,000 plus interest; and (3) past-due property settlement funds in the amount of $1,189.65 plus interest. Alice alleged that Theresa's disallowance of the claims was improper based on the clear and unambiguous language of the 2006 divorce decree. Alice alleged that "[b]ased on the Divorce Decree and [Alice's] expected life expectancy, the amount that will be due [Alice] under the Decree of Dissolution is $224,400.00" Alice asked the court to allow each of her three claims, including, but not limited to, an award of $224,400.

Alice also requested the appointment of a special administrator. She alleged that Theresa had a general power of attorney for William since June 26, 2006, and was also the personal representative of the Estate and that from the time

Theresa's power of attorney became activated through the date of William's death, William's liquid assets were reduced from approximately $1 million to $112,000, all while Theresa had actual knowledge of the alimony award under the divorce decree. Alice alleged that Theresa, acting as both power of attorney and personal representative, had "a conflict of interest to properly administer and/or preserve the [E]state, including but not limited to collecting assets belonging to the Estate and therefore a special administrator [was] necessary pursuant to and in accordance with Neb. Rev. Stat. §30-2457." (Emphasis omitted.)

Additionally, Alice challenged the Second Codicil executed by William on May 11, 2007, as being "subsequent to the date he was declared unable to conduct and manage his business affairs, pursuant to a Certificate of Disability." Alice alleged that because William was incompetent to execute the Second Codicil, it should be declared null and void and of no force and effect. (We note that relevant to these proceedings, the Second Codicil effectively removed Alice from William's will, except that it did provide that if Alice survived him, his executor "may" in his or her sole discretion allocate a portion of the "rest, residue and remainder" of the Estate to Theresa, "as Trustee of the William F. Lorenz Alimony Trust," which funds she may in her sole discretion use to pay Alice $2,000 per month to satisfy any obligation ordered by an Iowa court. (Emphasis omitted.))

On January 25, 2011, Theresa, as personal representative, filed her answer to the Petition. In her answer, Theresa affirmatively stated that the amounts claimed to be due in Alice's three statements of claim were incorrect and that therefore, the disallowance of claims was proper. She also affirmatively stated:

> [Theresa] has paid all amounts due to Alice . . . under and pursuant to the "Divorce Decree" described in the Petition other than future alimony payments and . . . adequate provision has been made for the payment of future alimony payments through [William's] Last Will and Testament and Codicils thereto that have been filed with the Court, including particularly Item III of the

Second Codicil which provides for establishment of the William F. Lorenz Alimony Trust. The Divorce Decree specifically contemplated and authorized satisfaction of future alimony obligations through a trust funded by [William], as specifically set forth in paragraph 12 of the Petition.

Theresa asked the court for an order denying each of the claims submitted by Alice, except for the claim for future alimony in the amount of $2,000 per month until Alice's death or remarriage. Theresa also asked the court for a further order authorizing and approving the satisfaction of such claim for future alimony through the funding of the "William F. Lorenz Alimony Trust" pursuant to the Second Codicil of William's will.

With regard to the appointment of a special administrator, Theresa affirmatively stated that Alice "lack[ed] standing to seek the appointment of a special administrator and [was] improperly seeking to require the Estate to incur expenses for the sole benefit of [Alice], which expenses should in equity be borne by [Alice]." Theresa also affirmatively stated that the Petition filed by Alice failed to state a cause of action for the appointment of a special administrator. Finally, Theresa affirmatively stated that William made adequate provision for the payment of future alimony payments to Alice via the alimony trust provision in the Second Codicil.

With regard to the Second Codicil, Theresa affirmatively stated that "[Alice], as a creditor of the Estate, has no interest or standing to assert the invalidity of the Second Codicil." Theresa also affirmatively stated that "the Second Codicil was formally admitted to probate by Order of [the Douglas County] Court after notice to interested persons, including [Alice], and formal hearing, which Order is final and nonappealable." Theresa alleged that Alice's prayer to have the Second Codicil declared to be null and void was barred by the doctrines of res judicata and collateral estoppel.

More than a year after the filing of the pleadings just described, on May 10, 2012, Alice and Theresa filed a stipulation regarding the life expectancy of Alice, agreeing that for purposes of the adjudication of Alice's claim against the

Estate, the life expectancy of Alice would be determined pursuant to "the Commissioners 2001 Standard Ordinary Mortality Table as approved by the Nebraska Department of Insurance," a copy of which was attached to the stipulation and incorporated by reference. However, the parties further stipulated that the Estate objected to the relevancy of Alice's life expectancy with regard to the adjudication of her claim against the Estate and that both parties reserved the right to present evidence regarding Alice's health or physical condition which may justify a departure from the mortality table in determining her life expectancy.

The county court granted continuances requested by Theresa in November 2011, August and December 2012, and January 2013.

On March 14, 2013, Theresa filed a motion for summary judgment as to the Petition dated December 21, 2010. Theresa alleged that the Estate was entitled to judgment as a matter of law on all of the claims in the Petition and asked the court to dismiss the Petition with prejudice, with the exception of the following claims: (1) Alice's statement of claim for alimony in the amount of $2,000 per month commencing September 1, 2010, and continuing each month thereafter should be allowed, with the additional condition that such claim and obligation terminates upon Alice's death or remarriage, whichever shall first occur, and (2) Alice's statement of claim for a property settlement in the amount of $1,189.65 plus interest should be partially allowed in the amount of $129.78, but otherwise disallowed.

A hearing on Theresa's motion for summary judgment was held on April 15, 2013. At the hearing, the county court took judicial notice of its June 24, 2010, order admitting the will and two codicils to formal probate as "valid, unrevoked and the last Will of [William]." Evidence was offered and received in support of and in opposition to the motion for summary judgment. The contents of such evidence will be discussed as necessary later in our analysis.

The county court's final order was filed on May 10, 2013. In that order, the court noted that the parties submitted briefs in support of their respective positions at the hearing on the

motion for summary judgment (however, those briefs do not appear in our record on appeal). The court also stated that after the hearing, "each party stipulated that the court consider additional argument by written correspondence dated April 17 [and] 24 and May 6, 2013" (similarly, neither the stipulation nor the written correspondence appears in our record on appeal, and the county court did not elaborate on what was contained in that correspondence).

The county court found: (1) A genuine issue of material fact existed regarding Alice's claim for interest for delinquent alimony, but both parties stipulated and conceded that the actual amount of delinquent alimony had been paid; (2) Alice's claim for alimony commencing September 1, 2010, in the amount of $2,000 per month should be allowed until she dies or remarries, whichever occurs first, and Alice's previous request for a lump sum based upon her life expectancy was withdrawn; (3) Alice's claim for interest as a result of a late property settlement payment should be allowed in the amount of $129.78; (4) Alice's demand for Theresa to compel beneficiaries of POD transfers to pay such transfers over to the Estate as a basis for the appointment of a special administrator was not timely as required by "Neb. Rev. Stat. Section 30-746" (later corrected by order nunc pro tunc to read Neb. Rev. Stat. § 30-2726 (Reissue 2008)); (5) the Petition for a special administrator was not warranted, because "the procedure by which to suspend and remove [Theresa as] Personal Representative and thereby [for] Appointment of a Special Administrator was not followed as required pursuant to Neb. Rev. Stat. Sections 30-2454 and 30-2457"; and (6) Alice's challenge to the validity of the Second Codicil was untimely, the court's order dated June 24, 2010, having validated William's will and both codicils, which order was final and appealable. Accordingly, the county court granted Theresa's motion for summary judgment, except for (1) Alice's claim for interest for delinquent alimony; (2) Alice's claim for alimony in the amount of $2,000 per month, commencing September 1, 2010, and continuing each month thereafter until she dies or remarries, whichever occurs first; and (3) Alice's claim for interest in the amount of $129.78 on a late property

settlement payment. The county court dismissed with preju-
dice Alice's request for appointment of a special administrator
and challenge to the Second Codicil.

Alice timely appeals the county court's May 10, 2013, order.

## III. ASSIGNMENT OF ERROR

Alice assigns that the county court erred as a matter of law
in sustaining Theresa's motion for summary judgment.

## IV. STANDARD OF REVIEW

[1-3] An appellate court reviews probate cases for error
appearing on the record made in the county court. *In re Estate
of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013). When
reviewing questions of law in a probate matter, an appellate
court reaches a conclusion independent of the determination
reached by the court below. *Id*. Statutory interpretation pre-
sents a question of law that an appellate court independently
reviews. *Id*.

[4,5] An appellate court will affirm a lower court's grant of
summary judgment if the pleadings and admissible evidence
offered at the hearing show that there is no genuine issue as to
any material facts or the ultimate inferences that may be drawn
from those facts and that the moving party is entitled to judg-
ment as a matter of law. *U.S. Bank Nat. Assn. v. Peterson*, 284
Neb. 820, 823 N.W.2d 460 (2012). In reviewing a summary
judgment, an appellate court views the evidence in the light
most favorable to the party against whom the judgment was
granted and gives that party the benefit of all reasonable infer-
ences deducible from the evidence. *Id*.

## V. ANALYSIS

### 1. CHALLENGE TO SECOND CODICIL

[6] Alice argues that the Second Codicil was executed with-
out the proper testamentary capacity. She also argues for the
first time, on appeal, that she was not given sufficient notice
of the probate proceedings wherein the will and codicils were
admitted to formal probate (specifically arguing that the notice
by publication was insufficient). However, Alice never raised
an alleged lack of sufficient notice to the county court. And

in appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006); *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005).

[7,8] Notice of Theresa's "Petition for Formal Probate of Will, Determination of Heirs, and Appointment of Personal Representative" in the matter of the Estate, and of a hearing thereon, was published in the "Daily Record of Omaha" for 3 consecutive weeks in May 2010. On June 24, the county court entered an order admitting the will and two codicils to formal probate as "valid, unrevoked and the last Will of [William]." The court also appointed Theresa as the personal representative of the Estate. Pursuant to Neb. Rev. Stat. § 30-2436 (Reissue 2008), the June 24 order was a final, appealable order. Section 30-2436 provides:

> Subject to appeal and subject to vacation as provided herein and in section 30-2437, a formal testacy order under sections 30-2433 to 30-2435, including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and to the determination of heirs . . . .

According to her affidavit filed on July 9, Theresa mailed a copy of the notice of the proceedings to numerous interested parties, including Alice, on July 2. Despite having notice of the order, Alice neither appealed nor filed a motion to vacate the June 24 order. See Neb. Rev. Stat. § 30-2437 (Reissue 2008) (for good cause shown, order in formal testacy proceeding may be modified or vacated within time allowed for appeal). See, also, Neb. Rev. Stat. §§ 30-1601(1) (Cum. Supp. 2014) and 25-1912(1) (Reissue 2008) (notice of appeal must be filed within 30 days after entry of final order). Because there was no appeal or motion to vacate the June 24 order, it was a final order; Alice cannot now challenge the validity of the Second Codicil. Accordingly, we affirm the county

court's finding that Alice's challenge to the Second Codicil was untimely, and we affirm its dismissal of such challenge with prejudice.

## 2. Appointment of Special Administrator

Alice argues that the appointment of a special administrator was necessary to preserve the Estate or secure its proper administration. According to Alice, "Theresa has colluded with [William and with] her . . . siblings to deprive the Estate of assets to settle creditor claims and is conflicted to properly administer the Estate, since she personally benefits from the [POD] and Individual Retirement Accounts, all of which justifies the appointment of a Special Administrator." Brief for appellant at 26. The county court dismissed Alice's request for appointment of a special administrator on two grounds: (1) The proper procedure for such an appointment was not followed, and (2) the demand for Theresa to compel POD beneficiaries to pay such transfers over to the Estate was not timely.

### (a) Procedure for Appointment of Special Administrator

The county court concluded that the Petition was not warranted, because

> the procedure by which to suspend and remove [Theresa as] Personal Representative and thereby [for] Appointment of a Special Administrator was not followed as required pursuant to Neb. Rev. Stat. Sections 30-2454 and 30-2457 (Reissue 2008). See also, [*In re Estate of Cooper*], 275 Neb. 322, 746 N.W.2d 663 (2008).

The county court's statement about not following the required procedure and then its cite to *In re Estate of Cooper*, 275 Neb. 322, 746 N.W.2d 663 (2008), indicate that the court must have read that case to mandate that a petition to suspend and remove a personal representative be filed before a motion to appoint a special administrator can be filed. We do not read the statutes, or *In re Estate of Cooper*, to require that two-step procedure in every circumstance.

With regard to the removal of a personal representative, Neb. Rev. Stat. § 30-2454(a) (Reissue 2008) states:

> *A person interested in the estate may petition for removal of a personal representative for cause at any time.* Upon filing of the petition, the court shall fix a time and place for hearing. Notice shall be given by the petitioner to the personal representative, and to other persons as the court may order. Except as otherwise ordered as provided in section 30-2450, after receipt of notice of removal proceedings, the personal representative shall not act except to account, to correct maladministration or preserve the estate. If removal is ordered, the court also shall direct by order the disposition of the assets remaining in the name of, or under the control of, the personal representative being removed.

(Emphasis supplied.) Alice is an "[i]nterested person" as defined by Neb. Rev. Stat. § 30-2209(21) (Reissue 2008).

With regard to a special administrator, Neb. Rev. Stat. § 30-2457 (Reissue 2008) permits a special administrator to be appointed after notice when a personal representative cannot or should not act and also permits the appointment of a special administrator without notice when an emergency exists. Section 30-2457 provides:

> A special administrator may be appointed:
>
> (1) informally by the registrar on the application of any interested person when necessary to protect the estate of a decedent prior to the appointment of a general personal representative or if a prior appointment has been terminated as provided in section 30-2452.
>
> (2) in a formal proceeding by order of the court on the petition of any interested person and finding, after notice and hearing, that appointment is necessary to preserve the estate or to secure its proper administration including its administration in circumstances where a general personal representative cannot or should not act. If it appears to the court that an emergency exists, appointment may be ordered without notice.

Nothing in § 30-2457 states that a personal representative must be suspended or removed prior to the filing of an application to appoint a special administrator.

Both the county court and Theresa rely on *In re Estate of Cooper*, 275 Neb. 322, 746 N.W.2d 663 (2008), to say that a personal representative must be suspended or removed prior to the filing of an application to appoint a special administrator. In *In re Estate of Cooper*, 275 Neb. at 330, 746 N.W.2d at 669, the Nebraska Supreme Court said:

> Taken together, [§§ 30-2454 and 30-2457] set forth a procedure by which to suspend and remove a personal representative and appoint a special administrator. Pursuant to § 30-2454, an interested person may petition the county court for the removal of the personal representative. The statute provides for notice of the petition to be given to the personal representative and others. It is important to note that under § 30-2454, once the personal representative receives such notice, he or she "shall not act," except in limited circumstances. Thus, notice to the personal representative under § 30-2454 effectively suspends the personal representative. Once a personal representative is prohibited from acting under § 30-2454, an interested party may thereafter move under § 30-2457 for the appointment of a special administrator, based on the facts that the personal representative has received notice under § 30-2454 and "cannot . . . act" and that the appointment of a special administrator would be appropriate "to preserve the estate or to secure its proper administration." § 30-2457.

However, *In re Estate of Cooper* is a case in which the interested person wanted to remove the personal representative and have a special administrator appointed. That two-step process may not always be necessary. Numerous situations could arise wherein an interested person would want a special administrator to be appointed to deal with specific issues that the personal representative cannot or should not handle, even though the personal representative is otherwise fully capable of handling the rest of the estate's administration.

*In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010), was a case in which the Nebraska Supreme Court addressed whether a county court erred in refusing to appoint a special administrator; there was no mention of the need to suspend or remove the personal representative as a prerequisite prior to the filing of a motion to appoint a special administrator. In *In re Estate of Muncillo*, the decedent's attorney was appointed as the personal representative of the estate. Relevant to the issue on appeal, the decedent had three bank accounts, listing one of her daughters either as the joint owner or as the POD beneficiary. The decedent's other two children objected to the distribution of the accounts to their sister, claiming that their mother's signatures on the account agreements had been obtained by undue influence. The other two children also filed for the appointment of a special administrator to pursue the accounts for the estate, claiming that the appointed personal representative was not pursuing the matter. The county court denied the application to appoint a special administrator, finding that a special administrator was not necessary because the personal representative could adequately protect the assets of the estate. On appeal, the Nebraska Supreme Court said:

> A special administrator should not be appointed every time a potential beneficiary disagrees with the personal representative's administration decisions, absent some showing that the personal representative is not lawfully fulfilling his or her duties under the [Nebraska Probate Code]. We determine that such a showing, at minimum, necessitates an allegation that the personal representative is perpetrating fraud, has colluded with another to deprive the estate of a potential asset, is conflicted to properly administer the estate, or cannot act to preserve the estate, or the existence of some other equitable circumstance, plus some evidence of the personal representative's alleged dereliction of duty.

*In re Estate of Muncillo*, 280 Neb. at 676-77, 789 N.W.2d at 43-44. The Nebraska Supreme Court then found that no such showing had been made in that case. Accordingly, the court "[could not] say that the county court's decision to deny the

application was arbitrary, capricious, or unreasonable." *Id*. at 678, 789 N.W.2d at 44.

Again, we note that the Supreme Court in *In re Estate of Muncillo, supra*, made no mention of the need to suspend or remove the personal representative as a prerequisite to the filing of a motion to appoint a special administrator. The implication is that the personal representative would have been fully capable of administering the remainder of the decedent's estate, even if the court would have found that a special administrator should have been appointed to pursue the three bank accounts for the estate.

We are further guided by discussion from other sources that state a personal representative and a special administrator can coexist. 31 Am. Jur. 2d *Executors and Administrators* § 1005 at 697-98 (2012) states:

> Under certain circumstances, the probate court may appoint a special administrator with limited powers over the decedent's estate. Such *special administrator is also known as an administrator ad litem* or a receiver. The special administrator is a fiduciary charged with acting in the best interests of the successors to the estate.
>
> *A general administrator and special administrator serve in different fiduciary capacities and are separate and distinct parties*. The appointment of an administrator ad litem may precede the appointment of the general administrator and *the two administrations may subsist together*. The administrator ad litem is appointed for a special and limited purpose. A typical situation for the appointment is when there is a delay in the appointment of a personal representative and a fiduciary is needed to take charge of the estate assets.

(Emphasis supplied.) Additionally, 31 Am. Jur. 2d, *supra*, § 1005 at 698, contains an observation note which states:

> A special administrator is solely responsible to the estate for that portion of its affairs entrusted to him or her by the court, to that extent supplanting the authority of the general personal representative, who continues to be responsible for the administration of all other aspects of the estate's business.

See, also, 31 Am. Jur. 2d, *supra*, § 1006 (commenting that appointment of special administrator enables estate to participate in transaction which general personal representative could not, or should not, handle because of conflict of interest); 34 C.J.S. *Executors and Administrators* § 952 b. (1998) (while ordinarily administrator ad litem will not be appointed where there is general administrator, those two administrators may subsist together; person appointed administrator ad litem becomes solely responsible for performance of specific duties authorized by court).

[9] Because a personal representative and a special administrator can coexist, Alice was not required to petition to suspend or remove Theresa as a prerequisite to filing a motion for the appointment of a special administrator. Accordingly, the county court erred in its decision to dismiss the Petition with prejudice on the basis that Alice failed to follow the proper procedure. Ordinarily, such an error would warrant reversing the judgment and remanding the cause for further proceedings with regard to the county court's decision to deny the appointment of a special administrator on this basis. However, we must also consider the county court's second basis for denying appointment of a special administrator.

### (b) Timeliness of Demand to Recover POD Transfers

In its order, the county court also found that "[Alice's] demand for [Theresa] to compel beneficiaries of [POD] transfers to pay such transfer[s] over to the [E]state as a basis for the Appointment of a Special Administrator was not timely as required by Neb. Rev. Stat. Section 30-[2726]." No explanation is provided in the order as to why the court concluded "[Alice's] demand" was not timely.

Alice argues on appeal that "[t]he [POD] claim was not an issue raised in [the] Petition," that Theresa's answer to the Petition did not affirmatively raise untimeliness as a defense, and that "[s]ince these matters were not pled as affirmative defenses, Alice had no notice as to what she had to meet in opposition to Theresa's Motion for Summary Judgment and was therefore not allowed the opportunity to present evidence

in opposition thereto under a multitude of available theories."
Brief for appellant at 18-19. Thus, before considering the trial
judge's determination that "[Alice's] demand" was not timely,
we first address Alice's argument that the POD issue was not
properly before the court.

### (i) Was POD Issue Properly Raised
### Before County Court?

Although Alice is correct that a specific request for recov-
ery of nonprobate transfers is not pled in the Petition, which
is dated December 21, 2010, we note that in the section of
the Petition pertaining to her request for the appointment of
a special administrator, Alice alleges that Theresa had knowl-
edge of the alimony award; that there was a "significant dis-
sipation of assets of [William] from the date of the Divorce
Decree"; that Theresa, "acting as both Power of Attorney and
Personal Representative, . . . has a conflict of interest to prop-
erly administer and/or preserve the [E]state, including but not
limited to collecting assets belonging to the Estate"; and that
therefore, "a special administrator is necessary." Additionally,
included in the evidence offered and received in opposition to
the summary judgment motion was an affidavit from Alice's
son, to which he attached pleadings from a pending Iowa case
wherein Alice was suing Theresa and other beneficiaries of
the Estate for assets transferred outside the Estate. Further,
Alice's attorney argued at the hearing on the summary judg-
ment motion that "there's nothing in the [E]state," that the
Iowa lawsuit alleges "a conspiracy to dissipate the [E]state,"
that a special administrator is needed to recover assets, and
that Theresa "refuses to join [the lawsuit] and has refused to
go out and do anything to recover those assets to make provi-
sion for [Alice's] $2000 a month alimony award." He contin-
ued, "All we are asking for is that there be sufficient assets
put back into the [E]state so that that $2000 a month alimony
award can be satisfied. And [Theresa] has failed and refused
to do that."

Theresa states in her brief:

The probate court also properly rejected [Alice's] argu-
ment that a special administrator should be appointed

to recover [POD] transfers from [William's] accounts, because a special administrator would be prohibited from making such demands and recovery just as much as [Theresa] is prohibited, because [Alice] failed to make a written demand upon [Theresa] to recover those amounts within one year of [William's] death. Neb. Rev. Stat. § 30-2726(b).

Brief for appellee at 21-22.

[10] Based on our review of the record, the assertions of the parties at the hearing on the motion for summary judgment, and the county court's determination on the issue, it is clear that the issue of recovering POD transfers was raised as a justification for the appointment of a special administrator. Cases are heard in an appellate court on the theory upon which they were tried. See *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994). Accordingly, we find that the issue was properly before the county court for determination. Alice asserts that if this court determines that the POD issue was properly before the county court, the court nevertheless "erred in finding that the claim was barred by the one year period in Neb. Rev. Stat. §30-2726(b)." Brief for appellant at 20 (emphasis omitted). We now consider that argument.

### (ii) Recovery of POD Transfers Requires Both Written and Timely Demand

To determine if a "demand" was timely, we first have to determine if there was a "demand." Therefore, we start by looking at the operative statute to see if the statute itself sheds any light on what constitutes a "written demand." Section 30-2726 provides a mechanism by which some nonprobate transfers, like those from a POD account, may be recovered if the estate is insufficient to pay certain obligations. Section 30-2726 provides in relevant part:

(a) If other assets of the estate are insufficient, a transfer resulting from a right of survivorship or POD designation under sections 30-2716 to 30-2733 is not effective

against the estate of a deceased party to the extent needed to pay claims against the estate . . . .

(b) A surviving party or beneficiary who receives payment from an account after death of a party is liable to account to the personal representative of the decedent for a proportionate share of the amount received to which the decedent, immediately before death, was beneficially entitled under section 30-2722, to the extent necessary to discharge the amounts described in subsection (a) of this section remaining unpaid after application of the decedent's estate. *A proceeding to assert the liability for claims against the estate . . . may not be commenced unless the personal representative has received a written demand by . . . a creditor . . . . The proceeding must be commenced within one year after death of the decedent.*

. . . .

(d) Sums recovered by the personal representative must be administered as part of the decedent's estate.

(Emphasis supplied.)

[11] Although the statute does not provide clarity on what might suffice as a "written demand," it is clear that the POD accounts at issue in the case before us are of the types of accounts contemplated by the statute. In *Newman v. Thomas*, 264 Neb. 801, 805, 652 N.W.2d 565, 570 (2002), the Nebraska Supreme Court specifically addressed the distinction between POD (nonprobate) and non-POD (probate) accounts, stating:

Article 27 of the Nebraska Probate Code governs nonprobate transfers, including POD accounts. See Neb. Rev. Stat. §§ 30-2715 through 30-2746 (Reissue 1995). In 1993, the Legislature repealed the previous version of article 27 and replaced it with a version based on the revised article VI of the Uniform Probate Code. . . .

Under the revised article 27, when the owner of a POD, single-party account dies, the sums on deposit belong to the surviving beneficiary or beneficiaries. § 30-2723(b)(2). A non-POD, single-party account, however, is not affected by the death of the owner.

Instead, the amount the owner was beneficially entitled to immediately before death is transferred to the estate. § 30-2723(c).

As noted, a POD account passes outside the estate and belongs to the surviving beneficiary and not to the estate; therefore, such a transfer "is not testamentary or subject to sections 30-2201 to 30-2512 (estate administration)." Neb. Rev. Stat. § 30-2725 (Reissue 2008).

[12] When a decedent's POD asset has been transferred outside his or her estate, § 30-2726 provides the mechanism by which such nonprobate transfer may be recovered by the estate if the estate is not otherwise able to meet its obligations. To employ the process set forth in § 30-2726(b) to recover nonprobate transfers, a "written demand" must be made upon the personal representative and then a proceeding to recover those nonprobate assets must be commenced within 1 year of the decedent's death. Accordingly, it follows that a "written demand" must be made within 1 year of the decedent's death in order for a proceeding to be commenced to recover those nonprobate assets within that same 1-year timeframe.

[13] Theresa argues that Alice failed to make a written demand upon Theresa (as personal representative) to recover any POD transfers within 1 year of William's death as required by the statute. William died on February 20, 2010. Therefore, based on § 30-2726, a written demand on Theresa had to occur in advance of February 20, 2011, and presumably with sufficient time left to permit the commencement of a proceeding to recover any nonprobate transfers before that 1-year deadline. Thus, if Alice did not make a "written demand" on Theresa within 1 year after William's death, it would be too late for Theresa (or an appointed special administrator) to pursue any of the POD transfers in this case. See *In re Estate of Robb*, 21 Neb. App. 429, 839 N.W.2d 368 (2013) (after special administrator is appointed, administrator has same power as personal representative, except power is limited to duties prescribed in trial court's order). See, also, Neb. Rev. Stat. § 30-2460 (Reissue 2008). So, if Alice's only basis for requesting the appointment of a special administrator was so that he or she could retrieve William's

nonprobate transfers, and if it was too late to do that, then the county court was correct to deny the appointment of a special administrator for that purpose. We now consider whether any such "written demand" was made by Alice on Theresa, and if there was such a demand, we will then examine whether it was timely.

### (iii) Did Alice Make Timely, Written Demand?

Alice argues that sufficient written demand was made upon Theresa. She specifically argues that in addition to a letter sent by her son to Theresa (among others) on April 19, 2010, which inquired about William's family's intentions with regard to Alice's alimony, Alice also timely filed her claims against the Estate, and that when they were disallowed, she timely filed a proceeding to establish the claims. Alice states, "In this case[,] demands in the form of correspondence from [Alice's son] and Alice's written claims described above were made well within the four month claims period and were served on [Theresa] well within the one year time frame." Brief for appellant at 21. Alice then suggests that "[o]nce Alice filed her claims[,] Theresa knew the Estate's assets would be insufficient to pay Alice's alimony claim, a fact evidenced by the present insolvent condition of the Estate." *Id.* Alice further stated:

> Once that demand has been received, the last sentence of Neb. Rev. Stat. §30-2726 provides that the proceeding must be commenced, by the Personal Representative, within one year after death of the decedent by the Personal Representative, not by the creditor. After all, it is the Personal Representative's duty, not a creditor's duty, to collect all assets of the Estate. Neb. Rev. Stat. §30-2464.

Brief for appellant at 21 (emphasis omitted). While we agree with Alice's position that it is the personal representative's role to commence a proceeding pursuant to § 30-2726, as discussed below, we must first determine whether the documents filed by Alice within a year of William's death suffice as an appropriate "written demand" pursuant to § 30-2726(b).

Alice filed a separate "Statement of Claim" for each of the following obligations alleged to be owed to her from the Estate: (1) property settlement funds of $1,189.65 plus interest, (2) delinquent alimony of $6,000 plus interest, and (3) future alimony of $2,000 per month for life. All three claims were filed on August 30, 2010, within 6 months of William's February 20 death, so they meet the 1-year requirement under § 30-2726. The claims, by themselves, make no reference to § 30-2726; nor do they make any reference to recovering nonprobate assets. However, in addition to the three separate claims filed against the Estate, putting Theresa on notice of the obligations allegedly due to Alice, Alice also filed the Petition, seeking allowance of her claims. Further, in that same Petition, which was also filed within a year of William's death, Alice sought the appointment of a special administrator because of the "significant dissipation of assets" and Theresa's "conflict of interest to properly administer and/or preserve the [E]state, including but not limited to collecting assets belonging to the Estate."

[14] We conclude that Alice's filing of her claims, particularly when considered along with the filing of the Petition, set forth sufficient "written demand" to have put Theresa on notice that nonprobate transfers may need to be collected for the Estate to meet its obligations to Alice. See, also, *In re Estate of Reinek*, No. A-95-1195, 1997 WL 618740 (Neb. App. Sept. 30, 1997) (not designated for permanent publication) (written demand requirement of § 30-2726(b) was met based upon claims being filed against estate).

Accordingly, since the three claims and the Petition were filed within a year of William's death, the county court erred in concluding that Alice's written demand was not timely. However, § 30-2726(b) involves another step once a timely written demand has been made. We now consider that next step.

Following a written demand made upon a personal representative, a proceeding must be brought to assert the liability for claims against the estate and such a proceeding "must be commenced within one year after death of decedent." *Id*. The statute does not state specifically who can or must bring such

a proceeding; however, the statutory language does indicate that the beneficiary of such nonprobate transfers "is liable to account to the personal representative of the decedent for a proportionate share of the amount received . . . to the extent necessary to discharge the amounts described in subsection (a) of this section remaining unpaid after application of the decedent's estate." § 30-2726(b). Additionally, § 30-2726(d) states in part that "[s]ums recovered by the personal representative must be administered as part of the decedent's estate." Based on this statutory language, particularly the language stating that the beneficiaries of such nonprobate transfers have to account only to the personal representative, we conclude that only a personal representative has standing to bring such an action against those beneficiaries. As such, it is the duty of the personal representative to bring an action to recover nonprobate transfers pursuant to § 30-2726 when a timely written demand has been made. See, also, *In re Estate of Reinek, supra* (duty of personal representative to bring proceedings pursuant to § 30-2726; breach of fiduciary duty upon failure to do so was not decided). The ramifications of Theresa's failure to bring a proceeding pursuant to § 30-2726 in the instant case are not before us. Rather, the issue before us is whether the county court erred in concluding that "[Alice's] demand for [Theresa] to compel beneficiaries of [POD] transfers to pay such transfer[s] over to the [E]state as a basis for the Appointment of a Special Administrator was not timely as required by Neb. Rev. Stat. Section 30-[2726]." As noted above, we conclude that the county court did err in finding that Alice's "demand" was not timely. That error, however, does not change the fact that by the time the matter was heard before the county court, it was too late for either a personal representative or an appointed special administrator to commence an action pursuant to § 30-2726, because more than 1 year had passed since William's death. Therefore, although for the wrong reason, it was not error for the county court to conclude that there was no basis to appoint a special administrator for purposes of § 30-2726. We do, however, reverse the county court's dismissal "with prejudice," insofar as that may have precluded any future effort to appoint

a special administrator for reasons other than commencing an action under § 30-2726. The order is therefore modified accordingly.

### (iv) Procedural and Timeliness
### Problems With § 30-2726(b)

For the sake of completeness, and as apparent from what took place in the proceedings below, we note that § 30-2726(b) in its current form presents procedural and timeliness issues by first placing a burden on a creditor to make a timely demand to the personal representative to pursue nonprobate transfers and then shifting the burden to the personal representative to commence a proceeding against nonprobate beneficiaries within 1 year of the decedent's death. This "recovery" process may first be frustrated by the fact that a creditor may not even know whether nonprobate assets exist, because they are nontestamentary and not subject to estate administration. See § 30-2725. Additionally, § 30-2726(b) can create a conflict of interest when, as in this case, a personal representative is also a nonprobate transfer beneficiary, potentially leading to increased litigation, costs, and delays.

We observe that although the Uniform Probate Code has been amended since Nebraska adopted "[Uniform Probate Code] Article VI, Nonprobate Transfers on Death (1989)," in 1993, Nebraska has not yet adopted any of the new proposed uniform provisions dealing with nonprobate transfers. See Introducer's Statement of Intent, L.B. 250, Committee on Judiciary, 93d Leg., 1st Sess. (Mar. 10, 1993). Accord *Newman v. Thomas*, 264 Neb. 801, 652 N.W.2d 565 (2002). Relevant to this case, the new proposed uniform provisions give creditors a more direct option to pursue nonprobate transfers. See Unif. Multiple-Person Accounts Act § 15, 8B U.L.A. 25 (2001) (noting that Uniform Probate Code was amended in 1998).

In line with the discussion above related to nonprobate transfers and the difficulty they can create for creditors, we briefly touch on Alice's final argument with regard to the nonprobate transfers in this case and the timeliness of her demand. Alice contends that nonprobate assets (e.g., William's

individual retirement and POD accounts) should have been listed on the Estate's inventory but were not. Alice argues that to the extent she failed to make a timely demand, it would be "unconscionable" to bar her claim, because Theresa never disclosed the existence of nonprobate assets in the inventory filed with the court. Brief for appellant at 22. However, as discussed earlier, nonprobate assets pass outside the estate. And while the listing of such transfers on a probate inventory may be preferred in practice for administrative and tax purposes, we are unable to find any Nebraska authority to indicate such a practice is mandatory. We note that a commonly used resource for probate practitioners, the Nebraska Probate System V, Administration Series, Notes and Instructions to Nebraska Continuing Legal Education Forms 330 and 331 (Nebraska State Bar Association 2006), states, "Items marked by asterisk [including 'Non-Probate Property subject to Nebraska inheritance tax'] on Forms 330 ['Inventory'] and 331 ['Short Form Inventory'] are not required in the Inventory under Nebraska Probate Code § 30-2467, but may be included for convenience for Determination of Inheritance Tax." Further, § 30-2725 states that "a transfer resulting from the application of section 30-2723 [which includes POD accounts]" becomes effective by reason of the nonprobate statutes "and is not testamentary or subject to" the estate administration statutes. Also, in this case, Alice was aware of the possibility of significant nonprobate transfers in light of information available to her about marital assets distributed to William at the time of their divorce in 2006. Finally, in light of this court's conclusion that a written demand was timely made, the inventory issue becomes irrelevant in this appeal, other than to incorporate the idea of the adequacy of estate inventories into our discussion on problematic issues facing creditors, like Alice in this instance, in obtaining satisfaction of their claims against otherwise insufficient estates.

### 3. PETITION FOR ALLOWANCE OF CLAIMS

[15] The county court did not dismiss the Petition Alice filed for allowance of claims pursuant to summary judgment.

The county court granted Theresa's motion for summary judgment, *except for* (1) Alice's claim for interest for delinquent alimony; (2) Alice's claim for alimony in the amount of $2,000 per month, commencing September 1, 2010, and continuing each month thereafter until she dies or remarries, whichever occurs first; and (3) Alice's claim for interest in the amount of $129.78 on a late property settlement payment. Therefore, these three matters were not included in the court's summary judgment determination. Alice's assignment of error states only, "The county court erred as a matter of law in sustaining [Theresa's] Motion for Summary Judgment," so although she discusses these three issues briefly in subparts of her brief, she does not specifically assign them as errors. Accordingly, we decline to address those matters here. See *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014) (assignments of error consisting of headings or subparts of argument section do not comply with mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2012); appellate court may, at its discretion, examine proceedings for plain error). The county court's handling of these three issues has been detailed previously, and we find no plain error in the determinations made by the county court with regard to the Petition.

### 4. ATTORNEY FEES ON APPEAL

[16] In her brief, Theresa asks this court to award her attorney fees because Alice prosecuted this appeal for delay or vexation, in violation of § 30-1601. Pursuant to § 30-1601(6), if it appears to the Nebraska Court of Appeals that an appeal of a probate matter was taken vexatiously or for delay, the court shall adjudge that the appellant shall pay the cost thereof, including an attorney fee, to the adverse party in an amount fixed by the Court of Appeals.

Theresa specifically states, "As the Court can observe none of [Alice's] appeal is supported by the law, and to a great extent is even newly founded." Brief for appellee at 26. Given our conclusions that the county court erred in some aspects of its determinations, and given the lack of authority on § 30-2726, we cannot say that this appeal was taken

vexatiously or for delay. We therefore deny Theresa's request for attorney fees on appeal.

## VI. CONCLUSION

For the reasons stated above, we affirm the county court's order as to the Second Codicil. However, we affirm as modified the court's order with respect to the appointment of a special administrator to reflect that Alice's request should have been dismissed without prejudice.

Affirmed as modified.